# United States Court of Appeals for the Tenth Circuit
### OFFICE OF THE CLERK
Byron White United States Courthouse
1823 Stout Street
Denver, Colorado 80257
(303)844-3157

Elisabeth A. Shumaker
Clerk of Court

Douglas E. Cressler
Chief Deputy Clerk

FILED
UNITED STATES DISTRICT COURT
DENVER, COLORADO

August 9, 2006

AUG   9 2006

GREGORY C. LANGHAM
CLERK

Mr. Gregory C. Langham, Clerk
United States District Court for the District of Colorado
Alfred A. Arraj United States Courthouse
Room A105
901 19th Street
Denver, CO 80294-3589

    Re:    04-1193 & 04-1215, In re: Special Grand Jury
             Dist/Ag docket: 96-Y-203

Dear Clerk:

    Enclosed are a certified copy of the judgment and a copy of
the opinion filed in this case which are issued as the mandate of
this court. See Fed. R. App. P. 41(a). Please file it in records of
your court or agency.

    Please contact this office if you have questions.

                Sincerely,

                Elisabeth A. Shumaker
                Clerk, Court of Appeals

        By:

                Deputy Clerk

clk:sts

cc:
    Jonathan Turley
    Kenneth E. Peck
    Bette Kathryn Bushell
    Jerry N. Jones
    William J. Leone
    Robert J. Corry Jr.

# UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

In re: SPECIAL GRAND JURY 89-2,

　　　　　Appellants.

Nos. 04-1193 and 04-1215

**JUDGMENT**

Filed June 15, 2006

A true copy
Teste
Elisabeth A. Shumaker
Clerk, U.S. Court of
Appeals, Tenth Circuit
By
Deputy Clerk

Before **MURPHY, EBEL,** and **HARTZ,** Circuit Judges.

This case originated in the District of Colorado and was argued by counsel.

The judgment of that court is reversed. The case is remanded to the United States District Court for the District of Colorado for further proceedings in accordance with the opinion of this court.

Entered for the Court
ELISABETH A. SHUMAKER, Clerk

by:
Deputy Clerk

**F I L E D**
United States Court of Appeals
Tenth Circuit

**June 15, 2006**

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

## UNITED STATES COURT OF APPEALS

### TENTH CIRCUIT

---

In re: SPECIAL GRAND JURY 89-2,

    Appellants.

Nos. 04-1193 and 04-1215

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
(D.C. NO. 96-Y-203)**

---

Jonathan Turley, George Washington Law School, Washington, D.C., and Kenneth E. Peck, Bushell & Peck, Denver, Colorado, (Bette K. Bushell, Bushell & Peck, Denver, Colorado, with him on the brief) for the Appellants.

Jerry N. Jones, Assistant United States Attorney (William J. Leone, Acting United States Attorney, with him on the brief), Denver, Colorado, for the Appellee.

---

Before **MURPHY**, **EBEL**, and **HARTZ**, Circuit Judges.

---

**HARTZ**, Circuit Judge.

---

Federal Rule of Criminal Procedure 6(e) prohibits grand jurors, court reporters, government attorneys, and others from disclosing "a matter occurring before the grand jury." The rule contains several exceptions authorizing disclosure to certain government attorneys and other government officials in specified circumstances, and permitting a court to authorize disclosure in other

limited circumstances. Appellants were members of a federal grand jury empaneled in 1989 to investigate possible environmental crimes at the Rocky Flats Nuclear Weapons Plant (Rocky Flats) in Colorado. They were discharged on March 24, 1992, on the eve of a plea agreement between the United States Attorney and Rockwell International Corporation (Rockwell), the operator of the facility under contract with the Department of Energy (DOE) from 1975 through 1989. At that time the grand jury submitted to the district court a report of its findings. In January 1993 the district court publicly released a heavily redacted version of the report.

On August 1, 1996, almost all the members of the grand jury filed with the district court a petition requesting that the secrecy obligation imposed on them by Rule 6(e) be lifted so that they could give an "accurate account" of certain matters that had occurred before the grand jury. Aplt. App. at 8. Later they added requests to release a less redacted version of the report, along with portions of the grand jury transcript and certain sealed filings from this case. They contend that some of this material is not governed by Rule 6(e); that some can be released under the exceptions in Rule 6(e); and that insofar as Rule 6(e) does not authorize disclosure of other material, the district court has inherent power to do so. One of the grand jurors, Appellant Kenneth Peck, has also separately filed a similar petition. The district court denied both petitions, believing that it lacked jurisdiction because the petitions sought only an advisory opinion and therefore

did not present a Case or Controversy under Article III of the United States
Constitution. Appellants filed two notices of appeal, one by Appellant Peck and
one by the others. We have jurisdiction under 28 U.S.C. § 1291.

On appeal the government contends that Appellants' notices of appeal were
untimely because they did not meet the 10-day deadline for appeals in criminal
cases, and that the district court lacked jurisdiction because the petitions sought
an advisory opinion and Appellants lacked standing. We disagree, holding that
the notices of appeal satisfied the time limits for appeals in civil cases and that
the district court had jurisdiction. We therefore reverse and remand for further
proceedings, providing some guidance to the district court regarding the scope of
Rule 6(e).

## I.   BACKGROUND

Rocky Flats is owned by the United States. It produced components for
nuclear weapons until it was shut down more than 10 years ago. From June 30,
1975, through 1989 it was operated by Rockwell. In 1987 the FBI began
investigating possible environmental crimes occurring at Rocky Flats, and on
August 1, 1989, the United States District Court for the District of Colorado
empaneled Special Grand Jury 89-2 for further investigation. The grand jury met
for more than two and one-half years, examined hundreds of boxes of evidence,
and heard testimony from more than 100 witnesses. Plea negotiations between
prosecutors and Rockwell began in 1990 and culminated in an agreement on

March 26, 1992, two days after the grand jury was formally discharged. Rockwell pleaded guilty to five felonies and five misdemeanors and agreed to pay a fine of $18.5 million. The plea agreement was accepted by the district court on June 1, 1992.

At the end of its service on March 24, 1992, the grand jury submitted to the district court a report of its findings; draft indictments purporting to charge current and former Rockwell and DOE employees with crimes; and documents, designated as "presentments," that alleged wrongdoing without any formal charges. *See In re Grand Jury Proceedings*, 813 F. Supp. 1451, 1456 (D. Colo. 1992). The United States Attorney refused to sign the indictments. On September 25, 1992, the supervising court issued an order prohibiting the report from being released to the public. *See id.*

A newspaper and a television station then filed a petition with the district court seeking release of the report, draft indictments, and presentments. The court denied much of the petition. It rejected the request for the draft indictments, noting that grand juries cannot initiate a prosecution or issue an indictment without the signature and approval of a United States Attorney. *Id.* at 1461-62. The request for the "presentments" was likewise denied because presentments are "considered obsolete in the federal system" and are "no longer included by statute as a charging document." *Id.* at 1462 (internal citations omitted).

-4-

As for the report, the district court acknowledged that grand juries may issue reports, *see* 18 U.S.C. § 3333, but it refused to release in full the report prepared by this grand jury, saying:

> The Court explained to the Special Grand Jury the detailed requirements of how to submit a report for public view. The Grand Jury held in its hands a unique opportunity to enlighten a community entitled to know of the successes and failures of its government, in this case, the operation of Rocky Flats. Accordingly, we must be clear on this point: it was possible for the special grand jury to draft an acceptable report, a report which the Court could, in good conscience, release to public view. It is with great regret that the Court has watched the Special Grand Jury fall short of the objectives of its empaneling. The Grand Jury submitted documents that failed the legal requirements for release.

*Id.* at 1459.[1] The court added, however, that "it may be that portions of the Report may legitimately be disclosed in order to enlighten the community on matters dealing with health, safety, and environmental concerns." *In re Grand Jury Proceedings,* 813 F. Supp. at 1468. It therefore ordered the government to

---

[1]In a later order, the court summarized its reasons for refusing to release the report. The report was faulty, the court said, because it

> accused individuals identifiable by name or position, including accusations against public officials that lacked the required recommendation for removal; dealt in rumor and conjecture; engaged in social and even legal argument; dealt with political and social issues outside the province of the special grand jury's duty of investigating crime; [and] contained charges not based upon a preponderance of the evidence.

Aplt. App. at 245 (Order Re Release of Grand Jury Docs. at 2, Jan. 26, 1993).

produce a redacted copy of the report for in camera review for possible release.
*Id.*

The court rejected some of the government's proposed redactions, but did redact "passages of legal argumentation and unsubstantiated, inappropriate charges against nongovernmental entities" as well as "material highly critical of identifiable individuals, forays into recommendations on national nuclear facilities policy, charges against entities beyond the scope of the Grand Jury's inquiry, conclusions without any factual bases whatsoever, and discussions of policy or activities outside the Grand Jury's charged jurisdiction . . . ." Aplt. App. at 247 n.4 (Order Re Release of Grand Jury Docs. at 4, Jan. 26, 1993). The court ordered release of the redacted report. No grand juror was a party to any of these proceedings.

On August 1, 1996, eighteen members of the grand jury (Appellants) filed a petition with the district court "seeking permission to release information and freedom to speak publicly about their experience as grand jurors and their perceptions of the conduct of government employees and Department of Justice lawyers." App. A at 17 (Order on Sealed Pets. at 2, March 12, 2004). An open hearing on the petition was held on November 26, 1996. One of Appellants' attorneys, Jonathan Turley, was instructed to file a proffer detailing the occurrences before the grand jury that Appellants wished to discuss publicly. The proffer was filed under seal in February 1997.

-6-

The matter was then referred to a magistrate judge to conduct a "non-adjudicatory hearing at which time sworn testimony will be given by former members of Grand Jury 89-2 relating to conduct or events which they allege have occurred." Aplt. App. Vol. 2 at 257. The district court ordered that the proceeding be closed, advising that this testimony was subject to the secrecy requirements of Rule 6(e). Testimony was taken from several of the grand jurors and sealed transcripts were delivered to the district court.

On September 24, 1997, the district court granted a motion relieving Mr. Turley and co-counsel Joan Manley from representation of Appellant Kenneth Peck. Bette K. Bushell continued to represent Appellant Peck but withdrew as counsel for the other 17 Appellants. (We will refer to the 17 Appellants still represented by Mr. Turley and Ms. Manley as "the Turley Appellants.") On September 26, in a sealed motion, Mr. Turley requested release to the parties of the transcripts of the grand jurors' testimony. On October 15 the district court ordered that the transcripts of the sealed hearing be released to the United States Attorney, as well as to Ms. Bushell and Mr. Turley, subject to the secrecy requirements of Rule 6(e), "for the limited purpose of pursuing this matter before this court and for no other purpose." *Id.* at 269. On December 30, 1997, Mr. Peck submitted a "Memorandum Concerning Proposed Procedure for Litigating the Issues." Aplee. Supp. App. Vol. B at 396. The district court did

not act on the memorandum. Nothing further occurred in the case for more than five years.

On April 22, 2003, in response to a letter from one of the grand jurors, the district court issued an order directing that "respective counsel for the petitioners shall file their statements specifying the relief sought." Aplt. App. Vol. 2 at 267. On June 21, 2003, the Turley Appellants submitted their statement. They requested release of (1) the transcript of the grand jurors' testimony and the proffer from the sealed hearing conducted in 1997; (2) the legal arguments and filings in this case; and (3) portions of the grand jury transcript and a less-redacted version of the grand jurors' report. They also requested (4) court findings regarding the grand jury's allegations of wrongdoing, and possible referral for investigation; (5) "confirmation that the grand jurors may discuss their allegations and the underlying controversy within the boundaries of the public record created in this case," *id*. at 287; (6) preservation of all grand jury material for possible future investigations by the Justice Department or Congress; and (7) attorney fees. They further suggested that this relief be addressed in two stages, with items (1) and (2) being addressed first and the remaining items addressed later. They also suggested procedures for dealing with each requested category of relief. With respect to the grand jury transcript they recommended that both sides be given the opportunity to review the transcript and identify which portions, if any, were relevant to the proffer and testimony of the grand jurors. They said that

-8-

"[t]hese portions will almost exclusively concern exchanges between the special grand jurors and the prosecutors . . . ." *Id.* at 286.  The parties would then propose redacted transcripts or summaries to the district court, which would review them to determine what should remain sealed.

Appellant Peck filed a separate petition on June 24, 2003.  According to the district court, his petition contends that because he is a lawyer, he should be released from the grand jury secrecy obligations so that he can report "claimed unethical and potentially criminal acts" and "inform the Attorney Regulation Counsel of the Colorado Supreme Court, the Inspector General for the Department of Justice, the Federal Bureau of Investigation and other regulatory and prosecutorial officials of his perceptions of the conduct of those involved in the Special Grand Jury proceedings." *Id.* at 373 (Order on Sealed Petitions at 4, March 12, 2004).  Appellant Peck also requested release of the grand jury report, but without any redactions.

In an order dated March 12, 2004, the district court denied the petitions for lack of jurisdiction, stating:

> [T]he petitions now before this court and the procedures suggested
> do not enable this court to go forward to adjudicate and balance the
> competing interests of grand jury secrecy and the interests of
> petitioners in public disclosure.  It is fundamental to the jurisdiction
> of this court that questions presented to it must be in the form of a
> case or controversy under Article III of the United States
> Constitution.  While the Tenth Circuit Court of Appeals recognized
> in *Hoffman-Pugh* [*v. Keenan*, 338 F.3d 1136 (10th Cir. 2003),] that
> the plaintiff there might seek relief from the court having supervisory

-9-

authority over the state grand jury and the petitioners are essentially seeking that type of relief here, the ultimate result would be nothing more than an advisory opinion of general conclusions and insufficient particularity to protect the petitioners from possible sanctions in criminal or civil proceedings.

*Id.* at 374.

## II. DISCUSSION

### A. Timeliness of Notices of Appeal

The district court's order denying Appellants their requested relief was filed on March 12, 2004. The Turley Appellants filed their notice of appeal 56 days later on May 7, 2004. Appellant Peck filed his notice of appeal on May 21, 2004, fourteen days after the Turley Appellants filed their notice and 70 days after the district court issued its final order. After issuing on October 7, 2004, an order to Appellants to show cause why their appeals should not be dismissed as untimely, this court dismissed the appeals as untimely on January 31, 2005. Appellants filed a petition for rehearing, which was granted on March 23, 2005, and the timeliness issue was referred to the merits panel. We now hold that the notices of appeal were timely.

This court has held that "[a] timely notice of appeal is both mandatory and jurisdictional." *United States v. Espinosa-Talamantes,* 319 F.3d 1245, 1246 (10th Cir. 2003) (internal quotation marks omitted).[2] The dispute here is whether this

---

[2]*United States v. Robinson,* 361 U.S. 220, 229 (1960), is often cited for this proposition. But in *Eberhart v. United States,* 126 S. Ct. 403 (2005), the Supreme (continued...)

case is civil or criminal. If criminal, then the notices of appeal were untimely under Fed. R. App. P. 4(b)(1)(A), which requires a defendant to file the notice within 10 days after entry of the judgment or order being appealed. If civil, then the Turley Appellants' notice was timely under Fed. R. App. P. 4(a)(1)(B), which permits 60 days to file the notice in a civil case to which the government is a party, and Appellant Peck's notice was timely under Fed. R. App. P. 4(a)(3), which grants an additional 14 days after another party has filed a timely notice. *See Woodruff v. Covington*, 389 F.3d 1117, 1120-21 (10th Cir. 2004) (Rule 4(a)(3) permits "any party to file a notice of appeal from any order within fourteen days after another party appealed a decision of the district court").

Ordinarily, it is obvious whether a case is criminal or civil. A criminal prosecution is a "criminal case" within the meaning of Rule 4. *See* 20 James Wm. Moore et al., Moore's Federal Practice ¶ 304.20 (3d ed. 1999) (hereafter Moore's)

---

[2](...continued)

Court retreated from what had been the widely accepted meaning of *Robinson* and strongly suggested that a timely notice of appeal is not jurisdictional and that objection to an untimely notice may be forfeited: "*Robinson* has created some confusion because of its observation that 'courts have uniformly held that the taking of an appeal within the prescribed time is *mandatory and jurisdictional.*' . . . [S]ubsequent opinions have repeated this phrase, attributing it directly or indirectly to *Robinson*." *Id.* at 406 (internal citation omitted). But the "narrow and unremarkable holding" of *Robinson* was that "when the Government objected to a filing untimely under Rule 37, the court's duty to dismiss the appeal was mandatory. The net effect of *Robinson* . . . is to admonish the Government that failure to object to untimely submissions entails forfeiture of the objection, and to admonish defendants that timeliness is of the essence . . . ." *Id.* Because we conclude that Appellants' notices of appeal were timely, we do not need to resolve today whether timeliness of a notice of appeal is jurisdictional.

And "[t]he term 'civil case,' although not defined in Appellate Rule 4, has been broadly construed to cover all cases that are not criminal prosecutions." *Id.* ¶ 304.10. The language of Rule 4(b) itself is quite suggestive. Entitled "Appeal in a Criminal Case," its timeliness requirements deal explicitly only with " a defendant's notice of appeal," Rule 4(b)(1)(A) (10-day limit), and "the government['s] . . . notice of appeal," Rule 4(b)(1)(B) (30-day limit). Accordingly, the 10-day time period generally applies only to a criminal defendant being prosecuted by the government. Rule 4(b)(1)(A).

Nevertheless, there are gray areas presenting challenging issues. On several occasions we have had to address whether a proceeding was criminal or civil for purposes of Rule 4. Our leading, and controlling, opinion is the *en banc* decision in *United States v. Brouillet*, 736 F.2d 1414 (10th Cir. 1984). *Brouillet* held that a proceeding relating to the forfeiture of a criminal bail bond was "essentially . . . civil" and governed by Rule 4(a)(1)(A), overruling our earlier decision in *United States v. Jones*, 567 F.2d 965 (10th Cir. 1977). *Jones* had held that such a forfeiture proceeding is a case "arising under the criminal laws and is governed by the rules of criminal procedure respecting the filing of appeals," *id.* at 967, because "all provisions for release from custody on bail, including those providing for forfeiture and judgment of default against the obligors on the bond, are set forth in the Rules of Criminal Procedure and in the Criminal Code," *id.* at 966-67. But *Brouillet* disowned that approach. We noted that four other circuits

-12-

had refused to follow *Jones*: "These circuits view a motion relating to the

forfeiture of a bail bond as *essentially a civil proceeding arising from a criminal*

*one*, similar to an action to collect a criminal fine." *Brouillet*, 736 F.2d at 1415

(emphasis added). We joined our fellow circuits in adopting the view that it is

the essential nature of the action, not the underlying proceeding it arose from, that

determines whether it is civil or criminal. *See United States v. Holland*, 214 F.3d

523, 526 (4th Cir. 2000) ("Ancillary motions in a criminal case are not

necessarily criminal . . . . Instead, a proceeding that is basically civil should be

considered a civil action even if it stems from a prior criminal prosecution."

(internal citations omitted)).

Our subsequent opinions have generally followed this view. *Company X v.*

*United States (In re Grand Jury Proceedings)*, 835 F.2d 237 (10th Cir. 1987),

held that an appeal from the district court's denial of a motion to quash a

subpoena issued by a grand jury was a criminal case controlled by Rule 4(b). We

noted the "investigative and charging function of the grand jury," *id.* at 239, and

the need for expedition in resolving legal challenges to its work, *id.* "[G]rand jury

proceedings," we concluded, "are criminal in nature." *Id.*

Next, in *United States v. Madden*, 95 F.3d 38, 39 n.1 (10th Cir. 1996), we

agreed with every other circuit that had ruled on the issue in holding that a motion

for return of property under Fed. R. Crim. P. 41(g) is civil rather than criminal.

Such proceedings are essentially civil because they "'represent a means by which

-13-

a criminal defendant can determine her rights in property, and not a part of the trial and punishment process that is criminal law.'" *Id. (*quoting *Hunt v. U.S. Dep't of Justice*, 2 F.3d 96, 97 (5th Cir. 1993)).

Perhaps our one outlier is *United States v. Robbins*, 179 F.3d 1268, 1270 (10th Cir. 1999), which held that a defendant's request for attorney fees after a failed prosecution was a criminal case governed by Rule 4(b)(1)(A). Robbins was charged with two counts of interfering with a federal employee but was acquitted after only 25 minutes of jury deliberations. He moved for fees under the Hyde Amendment, which provides that "'. . . in any *criminal* case . . . [the court] may award a reasonable attorney's fee and other litigation expenses, where the court finds that the position of the United States was vexatious, frivolous, or in bad faith . . . .'" *Id.* at 1269 (quoting Pub. L. No. 105-119, 111 Stat. 2440, 2519 (1998)). Rather than conducting an analysis of the essential nature of the proceeding at issue, as had been our prior practice, we simply held that the motion for attorney fees was criminal because it "arises out of" a criminal prosecution, and therefore the shorter appeal period in Rule 4(b) applied. *Id.* at 1270. Although other circuits have not adopted that view of proceedings under the Hyde Amendment, *see United States v. Bunn (In re 1997 Grand Jury)*, 215 F.3d 430, 435 (4th Cir. 2000) (Rule 4(a) applies); *United States v. Truesdale*, 211 F.3d 898, 902 (5th Cir. 2000) (same); *United States v. Perry*, 360 F.3d 519, 523 n.3 (6th Cir. 2004) (same); *United States v. Braunstein*, 281 F.3d 982, 993 (9th

-14-

Cir. 2002) (same); *United States v. Wade*, 255 F.3d 833, 839 n.5 (D.C. Cir. 2001) (same), it is still controlling in this circuit. *See United States v. Chanthadara*, 230 F.3d 1237, 1260 (10th Cir. 2000) ("Absent an intervening change in the law . . . , or en banc review, we cannot review the judgment of another panel of this court."). But *Robbins* did not, and could not, change the mode of analysis mandated by our prior decision in *Brouillet*. *Cf. United States v. Espinoza*, 244 F.3d 1234, 1244 (10th Cir. 2001) ("[W]hen faced with an intra-circuit conflict, a panel should follow earlier, settled precedent over a subsequent deviation therefrom." (internal quotation marks omitted)).

Finally, in *Espinosa-Talamantes*, 319 F.3d at 1246, we held that a motion to modify a term of imprisonment under 18 U.S.C. § 3582(c) was controlled by Rule 4(b)(1)(A) because it was "a continuation of the prior criminal proceeding." (internal quotation marks omitted). We cited with approval *United States v. Ono*, 72 F.3d 101, 102 (9th Cir. 1995) (motion under § 3582(c) is "a step in the criminal case" (internal quotation marks omitted)); *United States v. Petty*, 82 F.3d 809, 810 (8th Cir. 1996) (same); and *United States v. Alvarez*, 210 F.3d 309, 310 (5th Cir. 2000) (same).

Thus, however desirable a bright line rule may be, *see Company X*, 835 F.2d at 239 ("in matters relating to appellate jurisdiction, bright line rules are highly desirable"), such clarity is not always possible, and we "must examine the nature of the proceedings and of the order being appealed from" to determine

-15-

whether this is a criminal or civil case, 20 Moore's, *supra,* ¶ 304-20.  In our view, the case before us is a civil one.

This case involves merely the request for disclosure of secret information, not unlike a request under the Freedom of Information Act (FOIA).  A similar request was considered in *United States v. Miramontez,* 995 F.2d 56 (5th Cir. 1993).  Mr. Miramontez petitioned the district court for disclosure of grand jury transcripts, which he intended to use to file a petition for a writ of habeas corpus under 28 U.S.C. § 2241.  The district court treated his petition as a request under both FOIA and Rule 6(e), and denied it.  When Mr. Miramontez appealed 49 days after the ruling, the Fifth Circuit held that the case was civil and therefore the appeal was timely; the court noted that his conviction had long been final, and that the district court's treatment of the petition as a FOIA request "emphasizes the civil aspect of these proceedings."  *Id.* at 58; *see also United States v. Campbell,* 294 F.3d 824, 827 (7th Cir. 2002) (Rule 6(e) motions for disclosure are civil proceedings).  We agree with *Miramontez.*

The government presents four reasons why this should be treated as a criminal case.  First, relying on our opinion in *Company X,* 835 F.2d at 237, it asserts that appeals from grand jury proceedings are "*categorically* criminal." United States Juris. Mem. Br. at 8.  But in *Company X* we were being asked to review a subpoena from an active grand jury.  The appeal now before us, in contrast, will not affect the "investigative and charging function of the grand

-16-

jury," 835 F.2d at 239, whose activities are to be reviewed. This grand jury was discharged more than 13 years ago, and this case was not filed until more than four years after that discharge.

Second, the government notes that the grand jurors are seeking to be released from an obligation imposed on them by a rule of *criminal* procedure, and that grand jury secrecy protects the proper functioning of the *criminal* justice system. As described above, we relied on similar reasoning in *Jones*, noting that proceedings relating to the forfeiture of a criminal bail bond arise "under the criminal laws" and that the provisions relating to forfeiture "are set forth in the Rules of Criminal Procedure." 567 F.2d at 966-67. But we rejected this reasoning when we overruled *Jones* in *Brouillet*, 736 F.2d at 1415. Notwithstanding the underlying criminal case and rules, we looked to whether the case was essentially civil. *See id.*

Closely related to this argument is the government's third contention—that it is a rule of *criminal* procedure, Rule 6(e), that governs the process for seeking disclosure of grand jury materials. This is sufficiently addressed by the preceding paragraph. We add only that this argument is further undercut by *Madden*, 95 F.3d at 39 n.1, which held that a motion under Fed. R. Crim. P. 41(g) for return of seized property is a civil proceeding.

Finally, the government contends that this case encompasses a core grand jury function because Appellants have requested that the district court make

-17-

referrals for possible prosecution based on what occurred before the grand jury. But this is, at most, a collateral matter. There is no ongoing criminal investigation. The gist of Appellants' petitions is a request for disclosure of documents and permission to speak.

We hold that the proceeding below was "essentially a civil proceeding," *Brouillet*, 736 F.2d at 1415; Rule 4(a) therefore applies; and Appellants' notices of appeal were timely.

### B.   Article III Case or Controversy

The government contends that Appellants' claim must fail because the district court had no jurisdiction to hear the matter. The outlines of jurisdiction were summarized in *Flast v. Cohen*, 392 U.S. 83 (1968):

> The jurisdiction of federal courts is defined and limited by Article III of the Constitution. . . . [T]he judicial power of federal courts is constitutionally restricted to "cases" and "controversies." . . . Embodied in the words "cases" and "controversies" are two complementary but somewhat different limitations. In part those words limit the business of federal courts to questions presented in an adversary context and in a form historically viewed as capable of resolution through the judicial process. And in part those words define the role assigned to the judiciary in a tripartite allocation of power to assure that the federal courts will not intrude into areas committed to the other branches of government. Justiciability is the term of art employed to give expression to this dual limitation placed upon federal courts by the case-and-controversy doctrine.
>
> Justiciability is itself a concept of uncertain meaning and scope. Its reach is illustrated by the various grounds upon which questions sought to be adjudicated in federal courts have been held not to be justiciable. Thus, no justiciable controversy is presented when the parties seek adjudication of only a political question, when

-18-

the parties are asking for an advisory opinion, when the question
sought to be adjudicated has been mooted by subsequent
developments, and when there is no standing to maintain the action.

*Id.* at 94-95 (footnotes omitted).  The government raises two arguments why the

district court lacked jurisdiction: (1) they endorse the district court's view that

resolution of this case calls for only an advisory opinion, and (2) they contend

that Appellants lack standing.  We address, and reject, each argument in turn.  We

review jurisdictional questions de novo.  *See Prairie Band of Potawatomi Indians*

*v. Pierce*, 253 F.3d 1234, 1241 (10th Cir. 2001).

### 1.   Advisory Opinion

As stated in *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975):

[A] federal court has neither the power to render advisory opinions
nor to decide questions that cannot affect the rights of litigants in the
case before them.  Its judgments must resolve a real and substantial
controversy admitting of specific relief through a decree of a
conclusive character, as distinguished from an opinion advising what
the law would be upon a hypothetical state of facts.

(internal quotation marks omitted).  Thus, "[t]he real value of the judicial

pronouncement—what makes it a proper judicial resolution of a 'case or

controversy' rather than an advisory opinion—is in the settling of some dispute

which affects the behavior of the defendant towards the plaintiff."  *Hewitt v.*

*Helms*, 482 U.S. 755, 761 (1987) (emphasis omitted).

In denying Appellants' petitions the district court invoked Article III and

stated that "the petitions now before this court and the procedures suggested do

-19-

not enable this court to go forward to adjudicate and balance the competing interests of grand jury secrecy and the interests of petitioners in public disclosure," and that were the court to do so, "the ultimate result would be nothing more than an advisory opinion of general conclusions and insufficient particularity to protect the petitioners from possible sanctions in criminal or civil proceedings." Aplt. App. Vol. 2 at 373 (Order on Sealed Petitions at 4, March 12, 2004).

It is not clear to us why the district court felt that resolution of Appellants' petitions would require an advisory opinion. Aside from attorney fees, which are derivative of the other claims, *see Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 107 (1998) ("An interest in attorney's fees is insufficient to create an Article III case or controversy where none exists on the merits of the underlying claim." (internal quotation marks and ellipsis omitted)), the Turley Appellants requested six categories of relief: (1) release of the proffer and transcript from the 1997 hearings; (2) release of the legal arguments and filings from this case; (3) release of identified portions of the grand jury report and transcript relevant to the proffer; (4) findings from the court regarding the allegations of wrongdoing made by Appellants, and possible referral for further investigation; (5) permission for Appellants to discuss their concerns "within the boundaries of the public record," Aplt. App. Vol. 2 at 287 (Petitioners' Statement of Relief at 15, June 23, 2003); and (6) preservation of all grand jury material for

-20-

possible future investigations. With respect to categories (1) through (3), the Turley Appellants also proposed procedures whereby the court could determine, after appropriate motions and responses from each side, whether portions of these materials should be redacted before release. Appellant Peck likewise requested (1) release from the secrecy obligation, and (2) disclosure of (a) an unredacted version of the grand jury report, (b) his testimony before the magistrate judge, and (c) an affidavit attached to his petition which gives details about certain occurrences before the grand jury. There would be nothing advisory about a decision either granting or denying the requested relief. Either way, the ruling would relate not to a hypothetical set of facts, but to a concrete dispute concerning the parties before it.

The district court's view appears to have been based, at least in part, on a concern that the relief sought was not specific enough, because, for example, Appellants did not state precisely what portions of the report should remain redacted. But Appellants have sought release of specified documents. Their recognition that the government may pose objections and that the court may grant only partial relief hardly makes the case a hypothetical one. We have been directed to no authority, nor are we aware of any, stating that a claim seeks an advisory opinion unless it predicts how the court will rule on the claim. Such authority would surprise us.

-21-

Perhaps the request for findings by the district court regarding Appellants' allegations of wrongdoing amounts to a request for an advisory opinion, because it is not apparent how such nonbinding findings or recommendations would affect anyone's rights or duties under the law. *See Preiser*, 422 U.S. at 401 (federal court lacks power "to decide questions that cannot affect the rights of litigants in the case before them" (internal quotation marks omitted)); *United States v. Andersen*, 940 F.2d 593, 597 (10th Cir. 1991) ("The ultimate decision whether to charge a defendant, and what charges to file . . . , rests solely with state and federal prosecutors."). Appellants suggest that "[f]ederal courts routinely refer such matters for investigation once a cognizable basis for suspicion of criminal or unethical conduct has been brought to its attention." Aplt. Br. at 20. But we are unaware of, and have not been cited to, any instances in which courts have recognized a cause of action that merely seeks such a referral. The only authority cited by Appellants is *Muskrat v. United States*, 219 U.S. 346 (1911), and *Hayburn's Case*, 2 U.S. 408 (1792). Neither opinion, however, supports their contention. Neither case involved a request for a referral for prosecution (or anything similar), and both held that there was no jurisdiction. Nevertheless, Appellants' request for findings regarding their allegations of wrongdoing are a collateral matter, representing only a fraction of the relief sought, the bulk of which certainly does not seek an advisory opinion; and that particular request can be clarified, and perhaps rejected as beyond the court's jurisdiction, on remand.

-22-

## 2.   Standing

Closely related to the proscription against advisory opinions is the

"standing" requirement of Article III.  It "ensures that a plaintiff has a sufficient

personal stake in a dispute to ensure the existence of a live case or controversy

which renders judicial resolution appropriate." *Tandy v. City of Wichita*, 380

F.3d 1277, 1283 (10th Cir. 2004).  To establish standing, "plaintiffs must allege

(and ultimately prove) that they have suffered an 'injury in fact,' that the injury is

fairly traceable to the challenged action of the Defendants, and that it is

redressable by a favorable decision." *Initiative & Referendum Institute v. Walker*,

Nos. 02-4105, 02-4123, 2006 WL 1377028, at *3 (10th Cir. May 17, 2006) (en

banc).  The government contends that Appellants have not suffered the requisite

injury, and that the relief sought would not adequately redress the claimed

injuries.  Although this issue was raised below, the district court did not address it

because it found that it lacked jurisdiction on other grounds.

We first address the requirement that plaintiffs suffer an "injury in fact."

The Supreme Court has not precisely defined the term.  Some alleged injuries

suffice and some do not.  In *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560

(1992), the Supreme Court defined *injury in fact* as "an invasion of a legally

protected interest which is (a) concrete and particularized and (b) actual or

imminent, not conjectural or hypothetical." (internal citations and quotation

marks omitted).  The term *legally protected interest* has generated some confusion

-23-

because the Court has made clear that a plaintiff can have standing despite losing

on the merits—that is, even though the interest would not be protected by the law

in that case. *See, e.g., Warth v. Seldin*, 422 U.S. 490, 500 (1975) ("[S]tanding in

no way depends on the merits of the plaintiff's contention that particular conduct

is illegal . . . ."); *Tandy*, 380 F.3d at 1283 n.10 (same); *Initiative & Referendum*

*Institute*, 2006 WL 1377028, at *9 ("[W]here the plaintiff presents a nonfrivolous

legal challenge, alleging an injury to a protected right such as free speech, the

federal courts may not dismiss for lack of standing on the theory that the

underlying interest is not legally protected."); *cf. Pansy v. Borough of*

*Stroudsburg*, 23 F.3d 772, 777 (3d Cir. 1994) (newspapers seek disclosure of

sealed settlement agreement; "we need not determine that the Newspapers will

ultimately obtain access to the sought-after Settlement Agreement. We need only

find that the Order of Confidentiality being challenged presents an obstacle to the

Newspapers' attempt to obtain access.").

The post-*Lujan* opinion in *Bennett v. Spear*, 520 U.S. 154 (1997), written

for a unanimous court by *Lujan*'s author, may have been trying to dispel some of

this confusion by substituting "judicially cognizable interest," *id.* at 167, for

"legally protected interest" in the definition of *injury in fact*. We take this new

locution to emphasize that an interest can support standing even if it is not

protected by law (at least, not protected in the particular case at issue) so long as

it is the sort of interest that courts think to be of sufficient moment to justify

-24-

judicial intervention. This understanding would be consistent with the somewhat cynical view of a leading treatise on the matter: "The only conclusion [regarding what injuries are sufficient for standing] is that in addition to injuries to common law, constitutional, and statutory rights, a plaintiff has standing if he or she asserts an injury that the Court deems sufficient for standing purposes." Erwin Chemerinsky, Federal Jurisdiction § 2.3.2 at 74 (4th ed. 2003). The lesson for this case is that once an interest has been identified as a "judicially cognizable interest" in one case, it is such an interest in other cases as well (although there may be other grounds for granting standing in one case but not the other). In the new setting it may be abundantly clear that the interest is indeed not protected by any law, but, as previously noted, that lack of protection goes to the merits, not standing.

In this light, it is apparent that Appellants have a "judicially cognizable interest" in stating what they know. That interest is the same interest justifying standing to myriad litigants who have brought First Amendment claims challenging restrictions on their speech. *See, e.g., Members of the City Council of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 803 (1984) (supporters of political candidate had standing to challenge ordinance prohibiting posting of signs on public property); *American Civil Liberties Union v. Johnson*, 194 F.3d 1149, 1154-55 (10th Cir. 1999) (internet providers had standing to challenge statute prohibiting dissemination by computer of material that is harmful to

-25-

minors). Appellants wish to disclose matters that occurred before them while serving as grand jurors. To be sure, they also seek disclosure of documents. But this disclosure of documents is intimately connected to their desire to speak. What they know and wish to disclose is also in those documents, and public disclosure of the documents will both delineate what they can talk about and protect them against claims that what they say has gone beyond what is permitted.

We recognize, of course, that Appellants do not raise a claim under the First Amendment. But there is no requirement that the legal basis for the interest of plaintiff that is "injured in fact" be the same as, or even related to, the legal basis for the plaintiff's claim, at least outside the taxpayer-standing context. In *Duke Power v. Carolina Environmental Study Group, Inc.*, 438 U.S. 59, 78 (1978), the plaintiffs challenged as a violation of due process and equal protection the Price-Anderson Act's limitation on the liability of private nuclear power plants for nuclear accidents. The district court sustained the challenge because "the amount of recovery is not rationally related to the potential losses; . . . the Act tends to encourage irresponsibility in matters of safety and environmental protection; . . . there is no *quid pro quo* for the liability limitations; . . . [and] the Act places the cost of nuclear power on an arbitrarily chosen segment of society, those injured by nuclear catastrophe." *Id.* at 82 (internal brackets, citations, and quotation marks omitted). The Supreme Court addressed at length the issue of standing of the plaintiffs—a labor union, an environmental organization, and

-26-

persons who lived near the site of the planned facility.  It held that the injury-in-fact requirement was satisfied by the injuries the plaintiffs would suffer from the production of nuclear power—specifically, "the environmental and aesthetic consequences of the thermal pollution of the two lakes in the vicinity of the disputed power plants . . . [a]nd the emission of non-natural radiation into [their] environment."  *Id.* at 73-74.  The Court also held that the record supported a finding that overturning the Price-Anderson Act would remedy these injuries by making it unlikely that the plants would be constructed.  *Id.* at 74-76.

The Court then turned to the antistanding argument that the plaintiffs "must demonstrate a connection between the injuries they claim and the constitutional rights being asserted."  *Id.* at 78.  Such a nexus was lacking, went the argument, because "the environmental and health injuries claimed . . . are not directly related to the constitutional attack on the Price-Anderson Act . . . ."  *Id.*  The Court rejected the argument, observing that such a "nexus requirement," *id.* at 78, had been recognized only in the context of taxpayer suits, and refusing to extend it further, *id.* at 79.  More recently, Justice Scalia, in dissent, has observed, without apparent disapproval, that the "'logical nexus' analysis of [the taxpayer-standing case law] . . . has . . . fallen into desuetude."  *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 203 (2000) (Scalia, J. dissenting).

Hence, we are persuaded that an infringement on Appellants' interest in speaking can constitute the requisite injury in fact for Article III standing even though they are raising no First Amendment claim. Here, the critical feature of Appellants' claim is that they wish to set aside a bar to their speaking about what they already know. Regardless of the legal basis for the claim or its merits, granting Appellants standing to litigate whether they may speak, just as granting standing to those claiming a First Amendment violation in limiting their right to speech, will do no violence to the requirement that courts address only Cases or Controversies: this litigation presents the sort of concrete adversary contest typically presented to courts and the involvement of the judiciary hardly poses a threat to the "tripartite allocation of power," *Flast*, 392 U.S. at 95.

The government's attack on Appellants' "legally protected interest" focuses on the reasons why Appellants seek disclosure and freedom to speak. For example, Appellants state that they wish to speak out to protect their own reputations against what they assert to be false allegations. The government challenges this particular contention by arguing that their claim of injuries to their reputations is vague and speculative. Perhaps the government's characterization is correct. But the reasons why Appellants wish to speak are not the "interests" conveying standing. The government's argument is really directed at the merits of Appellants' claim—whether they have established adequate reasons to lift grand-jury secrecy. For standing purposes we need not concern ourselves with

*why* Appellants wish to speak. Regardless of their motives—whether to reveal alleged misconduct, protect their own reputations, make money, promote reform of nuclear power, or merely tell an interesting story to the press—it is enough that they wish to speak about matters within their knowledge.

Once we properly understand the interest claimed by Appellants, it is clear that it is concrete and particularized, actual and imminent, and not conjectural or hypothetical. Indeed, the "alleged injury is already occurring" because Appellants are currently prohibited from revealing information they possess. *Cf. Initiative & Referendum*, 2006 WL 1377028, at *13 (rejecting ripeness challenge because alleged injury—chilled speech—"does not depend on any uncertain, contingent future events" but is already occurring). Appellants have expressed a definite intent and desire to speak out about specific matters that occurred before them as grand jurors. It is the threat of punishment for violating Rule 6(e) that keeps them silent. *See Winsness v. Yocom*, 433 F.3d 727, 732 (10th Cir. 2006) ("[T]o satisfy Article III, the plaintiff's expressive activities must be inhibited by an objectively justified fear of real consequences, which can be satisfied by showing a credible threat of prosecution or other consequences following from the statute's enforcement." (internal quotation marks omitted)).

Moreover, Appellants' claimed injury is redressable. A court order disclosing documents and permitting them to speak would end the restraints that concern them. The government contends that a court order would still leave much

uncertainty about what the grand jurors could say. We are not convinced. It should be crystal clear to each grand juror that he or she is barred from disclosing anything not contained in released documents. To the extent that some gray areas may remain, the problem is not sufficiently great to deny standing.

We hold that Appellants have standing to petition to have the secrecy requirement lifted.

### C.     Claim Preclusion and Issue Preclusion

The government contends on appeal that Appellants' petitions are barred by the doctrines of claim preclusion and issue preclusion. This contention is without merit. Appellants were not parties to any former action involving release of the report. *See Park Lake Resources LLC v. U.S. Dep't of Agric.*, 378 F.3d 1132, 1136 (10th Cir. 2004) (party may be precluded from raising a claim or issue only when it was a party, or in privity with a party, to the prior action).

### D.     Merits

The government contends that Appellants are not entitled to relief under Rule 6(e), which, according to the government, is the exclusive vehicle for release of matters occurring before a grand jury. Appellants respond that Rule 6(e) is not the source of the supervising court's authority to order release of grand jury materials, but is merely declaratory of the general rule of grand jury secrecy, and that courts retain inherent authority to go beyond the rule. Appellant Peck also contends that some of his requests come within Rule 6(e)'s exceptions to the

secrecy requirement. And finally, Appellants contend that not all the material they seek consists of "matter occurring before the grand jury." Fed. R. Crim. P. 6(e)(2)(B). We first address this final contention and then turn to the question of inherent authority. We leave to the district court the separate contentions of Appellant Peck regarding the applicability of the exceptions in Rule 6(e).

### 1.     Matter occurring before a grand jury.

According to Appellants, the transcript and proffer from the 1997 sealed hearing are "not technically grand jury information since [they were] created long after the termination of Special Grand Jury 89-2 and were not created as part of the grand jury investigation." Aplt. Br. at 28. They also argue that the legal filings in this case "are standard filings sealed under the Court's general authority" and are not covered by Rule 6(e). *Id.* "[S]ome of these filings," they say, "contain absolutely no mention of any witness or document from the Special Grand Jury," but merely "focus on the legal issues in the case." *Id.* at 29. They further suggest that portions of the grand jury transcript, including certain exchanges between the grand jurors and prosecutors, could be released without offending Rule 6(e) by redacting names and other identifying factors.

We reject Appellants' contentions, at least in their full generality. First, the reproduction of grand jury material in a later proceeding does not remove that material from the protections of Rule 6(e). Otherwise, anyone with knowledge of grand jury proceedings could file a sealed petition in a separate proceeding

requesting release of grand jury material, and then, when the request was denied,

obtain release of the sealed petition without being bound by Rule 6(e).

Accordingly, Rule 6(e) contains the following provisions:

> **(5) Closed Hearing.** Subject to any right to an open hearing in a contempt proceeding, the court must close any hearing to the extent necessary to prevent disclosure of a matter occurring before a grand jury.

> **(6) Sealed records.** Records, orders, and subpoenas relating to grand-jury proceedings must be kept under seal to the extent and as long as necessary to prevent unauthorized disclosure of a matter occurring before a grand jury.

Fed. R. Crim. P. 6(e)(5), (6).  The Advisory Committee notes elaborate:

> This addition to Rule 6 would make it clear that certain hearings which would reveal matters which have previously occurred before a grand jury or are likely to occur before a grand jury with respect to a pending or ongoing investigation must be conducted in camera in whole or in part in order to prevent public disclosure of such secret information.

Fed. R. Crim. P. 6, advisory committee notes, 1983 Amendments.  As the Third

Circuit has stated:  "To preserve the secrecy of grand jury proceedings, the

district court must seal certain hearings and records, although not grand jury

proceedings themselves, when access to those hearings and records would

jeopardize grand jury secrecy." *United States v. Smith*, 123 F.3d 140, 149

(3d Cir. 1997); *see also, In re Newark Morning Ledger Co.*, 260 F.3d 217, 222

(3d Cir. 2001) ("[T]he secrecy of grand jury proceedings also extends to collateral

proceedings containing grand jury material . . . .").

In support of their claim that the transcript and proffer from the 1997 hearings are not covered by Rule 6(e), Appellants cite *DiLeo v. Commissioner*, 959 F.2d 16 (2d Cir. 1992), and *In re Plastics Additives Antitrust Litigation*, 2004 WL 2743591 (E.D. Pa. Nov. 29, 2004), for the proposition that "true grand jury material" is distinct from "material that is collateral and 'sought for its own sake or intrinsic value.'" Aplt. Br. at 28 n.14 (quoting *DiLeo*, 959 F.2d at 19-20). But these two cases provide no support for Appellants. The subject matter of interest in both cases was not testimony or discussion before the grand jury but documents originally in the hands of a witness who produced them to the grand jury. The issue in both cases was whether Rule 6(e) precluded other persons from obtaining the same documents by subpoenaing the same witness. The cases hold that Rule 6(e) is no bar because production in response to the subpoena "would not seriously compromise the secrecy of the grand jury's deliberations." *DiLeo*, 959 F.2d at 19 (internal quotation marks omitted); *see United States ex rel. Woodward v. Tynan*, 757 F.2d 1085, 1087-88 (10th Cir. 1985) ("[W]hen testimony or data is sought for its own sake—for its intrinsic value in the furtherance of a lawful investigation—rather than to learn what took place before the grand jury, it is not a valid defense to disclosure that the same information was revealed to a grand jury or that the same documents had been, or were presently being, examined by a grand jury." (internal quotation marks omitted)). Here, in contrast, disclosure is sought for the very purpose of revealing what occurred before the grand jury.

-33-

Thus, to the extent that the transcript and proffer from the 1997 sealed hearing disclose grand jury proceedings, they are protected by Rule 6(e). The same goes for the other legal filings in this case. Of course, purely legal argument, without reference to what occurred before the grand jury, needs no protection. But the district court's public orders, as well as this opinion, adequately disclose those matters. Perhaps more can properly be disclosed, but that can be better determined during the proceedings on remand, which we order.

There remains the question of what constitutes a "matter occurring before a grand jury," and therefore is protected from disclosure by Rule 6(e)(2)(B). Appellants' primary argument appears to be that what we might call administrative matters, such as exchanges between grand jurors and prosecutors concerning the grand jury's investigation, are not so covered. We are not persuaded.

We have broadly interpreted Rule 6(e) to encompass "what took place in the grand jury room," *Anaya v. United States*, 815 F.2d 1373, 1379 (10th Cir. 1987), or "what is said or . . . takes place in the grand jury room." *Tynan*, 757 F.2d at 1087 (internal quotation marks omitted). This includes, and properly so, exchanges between the grand jurors and prosecutors. These exchanges could reveal whom the grand jury is investigating and what witnesses have been called, how likely is an indictment, and what is the direction of the investigation. *See Douglas Oil Co. of Cal. v. Petrol Stops Nw.*, 441 U.S. 211, 219 n.10 (1979)

-34-

(grand jury secrecy "prevent[s] the escape of those whose indictment may be contemplated; . . . prevent[s] persons subject to indictment or their friends from importuning the grand jurors; . . . [and] protect[s] [the] innocent accused who is exonerated" (internal quotation marks omitted)).  Some grand jurors might be more hesitant to pose questions if there is a chance they might become public, and prosecutors' answers to questions also may be less forthcoming.  Secrecy encourages untrammeled discourse during the investigation.  *Id.* (grand jury secrecy "insures the utmost freedom to the grand jury in its deliberations" (internal quotation marks omitted)).  As stated by the D.C. Circuit, "[T]he touchstone is whether disclosure would tend to reveal some secret aspect of the grand jury's investigation[;] such matters as the identities of witnesses or jurors, the substance of testimony, *the strategy or direction of the investigation, the deliberations or questions of jurors*, and the like." *Senate of Puerto Rico ex rel. Judiciary Comm. v. United States*, 823 F.2d 574, 582 (D.C. Cir. 1987) (emphasis added; internal quotation marks omitted).

To be sure, as Appellants contend, some of these concerns can be ameliorated by redacting names.  And the fact that the grand jury ended its investigation long ago also reduces the need for secrecy.  These considerations can be weighed in determining whether a "matter occurring before the grand jury" should be disclosed.  They do not mean, however, that such exchanges are not covered by Rule 6(e).  *See Douglas Oil Co.*, 441 U.S. at 222 ("[T]he interests in

grand jury secrecy, although reduced, are not eliminated merely because the grand jury has ended its activities.").

Other authorities support this broad view of Rule 6(e). *See United States v. Phillips*, 843 F.2d 438, 441 (11th Cir. 1988) ("The term 'matters occurring before a grand jury' has been defined to include anything that will reveal what transpired during the grand jury proceedings."); *Lance v. United States (In re Grand Jury Investigation)*, 610 F.2d 202, 216 (5th Cir. 1980) ("Courts have interpreted the secrecy requirement imposed by Rule 6(e) to apply not only to information drawn from transcripts of grand jury proceedings, but also to anything which may tend to reveal what transpired before the grand jury." (internal quotation marks omitted)); 1 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 106 (3d ed. 1999) ("The rule of secrecy applies . . . to anything . . . that might tend to reveal what happened in the grand-jury room."); 24 Moore's, *supra*, ¶ 606.06[6] ("The term 'matter occurring before the grand jury' has been defined as anything that will reveal what transpired during the grand jury proceedings."); Sara Sun Beale, et al., Grand Jury Law and Practice § 5.6 (2d ed. 2005) ("The touchstone for determining whether the disclosure of a particular item would reveal 'a matter occurring before the grand jury' is whether the disclosure of the item would reveal something of substance about the grand jury's investigation.").

**2.     Disclosure of Grand Jury Material**

-36-

Having determined that the disclosures sought by Appellants are, with perhaps a few modest exceptions, governed by Rule 6(e), we remand to the district court to determine in the first instance whether any of the relief sought by Appellants is warranted. The court initially must determine whether Rule 6(e) authorizes disclosures for Appellants' purposes, and, if so, whether they have met "the standard for determining when the traditional secrecy of the grand jury may be broken." *Douglas Oil Co.*, 441 U.S. at 222.

> Parties seeking grand jury transcripts under Rule 6(e) must show that the material they seek is needed to avoid a possible injustice in another judicial proceeding, that the need for disclosure is greater than the need for continued secrecy, and that their request is structured to cover only material so needed.

*Id.*

If Appellants seek relief beyond what, if any, is granted by the court under Rule 6(e), the court must then determine whether relief outside of Rule 6(e) is appropriate. This would be a two-part inquiry. First, as previously noted, some matters that Appellants seek to disclose, such as legal arguments in their pleadings, may not be protected by Rule 6(e) and can be disclosed, perhaps in redacted form.

Second, some relief may be proper under the court's inherent authority. The government contends that there is no such inherent authority. The Appellants contend the contrary. There is substantial support for Appellants' position. Several courts have held that "a court's power to order disclosure of grand jury

-37-

records is not strictly confined to instances spelled out in [Rule 6(e)]." *In re Petition to Inspect and Copy Grand Jury Materials*, 735 F.2d 1261, 1268 (11th Cir. 1984); *see also Craig v. United States (In re Petition of Craig)*, 131 F.3d 99, 102 (2d Cir. 1997) ("Although . . . Rule 6(e) governs almost all requests for the release of grand jury records, this court has recognized that there are certain 'special circumstances' in which release of grand jury records is appropriate even outside the boundaries of the rule."); *In re Grand Jury Proceedings*, 417 F.3d 18, 26 (1st Cir. 2005) (Rule 6(e) permits "rare exceptions premised on inherent judicial power" to *restrict* disclosure beyond the requirements of the rule); *see generally*, Beale, et al., *supra*, § 5.19 ("The courts . . . have recognized an 'inherent authority' to disclose grand jury materials, although they have confined that authority to exceptional cases.").

The Supreme Court, however, has not explicitly recognized such authority. To be sure, it has recognized that disclosure of grand jury materials is "committed to the discretion of the trial judge," *Pittsburgh Plate Glass Co. v. United States*, 360 U.S. 395, 399 (1959); but it does not necessarily follow that Rule 6(e) sets no boundaries on that discretion. Although the Court has said that "Rule 6(e) is but declaratory [of the proposition that disclosure is committed to the trial judge's discretion]," *id.*, it also said in the same opinion that "*any* disclosure of grand jury minutes is covered by Fed. Rules Crim. P. 6(e) promulgated by this Court," *id.* at 398 (emphasis added). And the Advisory Committee notes state that

-38-

"Rule 6(e) continues to spell out the general rule of secrecy of grand-jury proceedings *and the exceptions to that general rule*." Fed. R. Civ. P. 6(e), advisory committee notes, 2002 Amendments (emphasis added); *see also* 1 Wright & Miller, Federal Practice and Procedure § 106 ("[R]eliance on the inherent powers doctrine is suspect." (internal quotation marks omitted)).

In our view, it would be unwise for us to resolve this delicate issue on the present record.  The cases that have recognized this inherent authority "have confined [it] to exceptional cases."  Beale et al., *supra*, § 5.6.  The district court should therefore first determine whether such circumstances are present before deciding whether it has inherent power to permit or order disclosure.

We REVERSE and REMAND for further consideration in accordance with this opinion.

-39-