**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
Judge Richard P. Matsch

IN RE                                                       96 Y 203

SPECIAL GRAND JURY 89-2

---

## PETITIONERS' STATEMENT OF RELIEF

---

### INTRODUCTION

Petitioners, former members of Special Grand Jury 89-2, respectfully submit
the following statement of relief in compliance with the Court's September 25,
2006 order and the scheduling order of October 30, 2006.  This statement of relief
parallels the relief sought in the original Petition filed with this Court on August 1,
1996.[1]

On June 15, 2006, the United States Court of Appeals for the Tenth Circuit
found that Petitioners did have standing to ask for the release of material currently
under seal with the Court and that the Court had authority to order the release of
such information under both Rule 6(e) of the Federal Rules of Criminal Procedure
as well as its inherent authority. *In re Special Grand Jury 89-2*, 450 F.3d 1159
(10th Cir. 2006).  The Court of Appeals further noted that it believed that some of
the material under seal is not subject to Rule 6(e) and that other material, while

---

[1] References to supporting material will cite to the Petition and its exhibits rather

covered by Rule 6(e), may still be released in full or redacted form. This remand was ordered to address the different categories of information currently under seal. *Id.*

Now that the government's prior claims of both procedural and standing barriers have been set aside by the Court of Appeals, it is possible to address the specific categories of material raised in the Petitioners' prior Petition for Relief. To that end, Petitioners believe that a hearing would assist the Court in resolving the factual and legal questions related to the release of material currently under seal.

## BACKGROUND

On August 1, 1989, Special Grand Jury 89-2 was impaneled to investigate possible federal crimes committed at the Rocky Flats Nuclear Weapons Plant in Jefferson County, Colorado (hereinafter Rocky Flats). On March 24, 1992, the grand jurors submitted proposed indictments against Rockwell, as well as former and current Rockwell and DOE employees. *See In re Grand Jury Proceedings, Special Grand Jury 89-2*, 813 F. Supp. 1451, 1456 (D. Colo. 1992); *see also* Subcommittee on Investigation and Oversight, House Committee on Science, Space, and Technology, 103rd Cong., 1st Sess., *The Prosecution of Environmental Crimes at the Department of Energy's Rocky Flats Facility*, Vol. I, Ex. D at 16 (noting that the grand jury allegedly charged five Rockwell and three DOE

than burden the Court with a voluminous set of exhibits with this filing.

officials). On March 26, 1992, the Justice Department and Rockwell entered into a plea agreement. This plea bargain led to a public outcry and a series of congressional hearings and investigations, which are detailed in the Petition as Exhibits D (Vol. I), E (Vol. I), & F (Vol. II).

At the end of their service, the grand jurors submitted a report describing their findings (hereinafter the grand jury report), as well as a presentment.  Former Chief Judge Sherman Finesilver of the District Court for the District of Colorado sealed all of these documents.  On September 25, 1992, Judge Finesilver entered an order prohibiting the report from being entered as a public record. The court also ordered the government to submit a proposed redacted report for in camera inspection.  *Id*.  Judge Finesilver released a redacted version of the report to the public on January 29, 1993. [*See* Petition, Vol. II, Ex. G].  At the time, Judge Finesilver voiced disappointment that he did not feel free to release these grand jury materials. In its published opinion, the court indicated it would have preferred to release the grand jury's findings since "[t]he Grand Jury held in its hands a unique opportunity to enlighten a community entitled to know of the successes and failures of its government, in this case the operation of Rocky Flats."  *Rocky Flats Grand Jury*, 813 F. Supp. at 1455.  Refusing to forego all hope of eventual disclosure, the court stated that it would "continue to pursue appropriate avenues to illuminate for the public the activities at Rocky Flats." *Id.* at 1469.

The indictment and presentment remain under seal. In its redacted form, the

report contains excerpted segments of the original report followed by the government's response to this redacted analysis. The government's redacted version does not indicate the extent of excised material, its subject matter, or the basis for specific redactions. [*See* Petition, Vol. II, Ex. G]. In some cases, single paragraphs are followed by pages of "rebuttal" by the government. [*See* Petition, Vol. II, Ex. G at 1-8]. While most redacted documents have material blocked out from the original text to indicate the amount of deleted text, the Justice Department retyped the entire report and thereby obscured the amount of material removed from the original. Given this discontinuous and fragmented reproduction, the former grand jurors objected that the report was unrecognizable and misleading.

On August 1, 1996, the instant case was filed with a petition from virtually all of the former members of the Rocky Flats Special Grand Jury represented as a group. Petitioners sought the release of information related to their allegations of violations of federal law and prosecutorial misconduct.[2]

---

[2] There were twenty-three members of Special Grand Jury 89-2 at the time it submitted its report. All twenty-three members retained current counsel in 1992, to seek congressional immunity and to protect their interests in the ensuing investigation conducted by the Justice Department. Since that time, one grand juror has been incapacitated and could not join any legal action. Another grand juror could not be located by counsel although she had retained counsel to represent her in this matter in 1992. [Petition, Vol. I, Ex. A]. Three grand jurors have been severed from the joint representation due to independent political activities or conflicts, including Mr. Peck. Following the testimony of the former grand jurors, Petitioners' Counsel informed the Court that they could no longer represent Mr. Peck for undisclosed ethical reasons. The Court granted their motion to withdraw from representation of Mr. Peck, who is continuing in this action with independent

On November 26, 1996, this Court held a public hearing on the threshold challenge by the Justice Department to the filing of the petition. The government asserted that the Petitioners could not speak publicly or testify on any matters related to the grand jury proceedings. The government argued that this Court lacked the authority to release Rule 6(e) material. Petitioners argued that such a position swept too broadly and that this Court had the authority to lift the seal from grand jury information. Moreover, Petitioners maintained that Rule 6(e) does not bar the release of the information in this case. Specifically, evidence of criminal conduct or wrongdoing by prosecutors is not restricted in the same fashion as core grand jury testimony. Mr. Turley argued that the Petitioners be allowed to testify about the alleged misconduct and to create a tailored record for possible release in the case. Petitioners offered to submit an attorney proffer as a foundation for such testimony by the Petitioners. The Court ruled in favor of the Petitioners and ordered Mr. Turley to prepare and file such a proffer. Court Tr. (11/26/96) at 47.

During the week of February 17, 1997, Mr. Turley and co-counsel Ms. Joan Manley interviewed the Petitioners in Denver to establish their likely testimony.[3] Shortly thereafter the proffer was filed under seal with this Court detailing the anticipated testimony of Petitioners.  This proffer stated that Petitioners were

---

counsel. Accordingly, references to "the Petitioners" in this filing refer to all of the represented former grand jurors, except Mr. Peck.

[3] Ms. Manley withdrew as counsel after she accepted a position as a federal enforcement attorney.

prepared to testify under oath to establish the specific allegations of prosecutorial misconduct.

After receiving the proffer, the Court granted the request for testimony and ordered a series of hearings before United States Magistrate Judge Patricia A. Coan in which the Petitioners would testify under examination by their counsel.  Over the course of multiple hearings in July and August 1997, the Petitioners were examined individually by Mr. Turley.  Each addressed the specific allegations laid out in the proffer. This testimony was transcribed and delivered to this Court.

On September 24, 1997, a conference was held with the Court, Mr. Turley, and United States Attorney Solano.[4]  On September 26, 1997, the petitioners (except for Mr. Peck)[5] moved for a copy of the transcripts. This Court granted the motion and ordered the release of the transcripts to counsel on October 15, 1997.

In their original filing, Petitioners filed a specific request for relief as well as the basis for such relief.[6]  On April 22, 2003, the Court rejected a proposal for

_____

[4] Ms. Bushell did not appear for this conference, resulting in a show cause order on October 2, 1997 to establish her client's position.

[5] Following the testimony of the Petitioners, Mr. Turley and Ms. Manley filed a motion to allow them to terminate their representation of former grand juror Kenneth Peck as a client and to relieve attorney Bette Bushell as local counsel. Confidentiality restrictions prevented the specific reasons for this action from being disclosed, but the motion indicated that an irreconcilable conflict between Mr. Peck and the remaining Petitioners had emerged.

[6] Due to the outstanding motion for sanctions, no further motions were filed pending resolution of the status of both Mr. Peck and Ms. Bushell.  On November 13, 1997, Mr. Turley filed a Motion for Rule 11 Sanctions against both Ms. Bushell and Mr. Peck for filing knowingly false statements with this Court. In its

resolution submitted by Mr. Peck. The Court then ordered the filing of specific relief sought by the Petitioners. On June 21, 2003, Appellants submitted their requested relief, which is reflected in the instant filing.  On March 3, 2004, the Court denied all relief and dismissed the case.  Petitioners then filed an appeal and Mr. Peck was later allowed to file a cross-appeal in response to Petitioners' appellate filing.  The Tenth Circuit reversed and remand the case on June 15, 2006.

## SPECIFIC PROPOSAL FOR RELIEF

In their June 2003 motion, Appellants divided material in the case into six categories and recommended a phased approach to the review and release of information.  The six categories of relief requested by the Appellants can be reduced to three sets of sealed material:  (1) the legal filings of the Appellants and responsive filings from the government; (2) the transcript and the proffer related to the 1997 hearings; and (3) excerpts from the grand jury transcript itself and still sealed portions of the grand jury report.

The first group contains legal filings in this case. The Tenth Circuit noted that this material is presumptively not covered by Rule 6(e) and that, without reference to what occurred before the grand jury, needs no protection."  *In re Special Grand Jury 89-2*, 450 F.3d 1159, 1177 (10th Cir. 2006).

---

May 20, 2003 order, the Court decided that the charges against Mr. Peck and Ms. Bushell should be addressed under D.C. COLO. 83.5 so as not to delay these proceedings.  Due to the sealing of material in the case, no action has been taken on the ethical issues raised by Petitioners vis-à-vis Mr. Peck or Ms. Bushel.

The second group contains the 1997 transcript and Turley Proffer.  This material should be released in full form under either Rule 6(e) or the Court's inherent authority pursuant to the guidelines laid out by the Tenth Circuit.

The third group contains the isolated transcripts from the Grand Jury proceedings and sealed portions of the Grand Jury report.  While the Grand Jury Report should be released in full or properly redacted form, Petitioners accept the transcripts from the grand jury should be kept largely under seal.  They seek only isolated passages that confirm the exchanges between the prosecutors and the grand jurors raised in the 1997 transcripts and the Turley Proffer.  These passages relate to the alleged prosecutorial misconduct.  This material should be released in redacted or full form under Rule 6(e), or alternatively under the Court's inherent authority.[7]

Finally, as detailed below, Petitioners request a written decision affirming the role of both the grand jury members and prosecutors in the grand jury process – specifically addressing such basic points as the fact that grand jurors are not required to ask questions in a legally correct form.  Petitioners also repeat their request for reasonable attorneys fees and costs once final relief is granted in this case.

---

[7]     As an alternative, the release of this material can be held in abeyance pending any proceedings by the judicial or legislative proceedings.   In such a case, the petitioners or a party to such proceedings can seek the release of relevant information.

## THE STANDARDS FOR
## THE RELEASE OF MATERIAL IN THE THREE GROUPS OF
## IDENTIFIED MATERIAL

### A. THE STANDARDS FOR RELEASE OF MATERIAL IN THE FIRST GROUP.

At the outset, the parties should be able to resolve the status of the first group without burdening the Court. Much of this material references only the legal arguments and precedent in the case – not matters that occurred in the grand jury room.  These are standard filings sealed under the Court's general authority to avoid any unwitting or unauthorized disclosures.  A cursory examination of these filings demonstrates that they do not raise legitimate issues related to grand jury secrecy.  Such filings have been sealed under the Court's inherent authority and should be unsealed when the Court determines that they contain no privileged or confidential material. *Gentile v. State Bar of Nevada*, 501 U.S. 1020, 1035 (1990).

Petitioners propose that the Court give the government thirty (30) days to propose any redactions of filings currently under seal.  These proposed redactions would then be considered with the Turley Proffer and 1997 transcripts while unredacted material would be unsealed.

### B. THE STANDARD FOR RELEASE OF MATERIAL IN THE SECOND AND THIRD GROUPS.

Material in the second and third groups includes grand jury related material that would have to be released under either Rule 6(e) or the Court's inherent authority.  The Tenth Circuit reaffirmed that the Court has the authority to release

the material in the second and third groups of documents under either Rule 6(e) or

its inherent authority.  As for Rule 6(e), the Court stressed that

> [t]o be sure, as Appellants contend, some of these concerns can be
> ameliorated by redacting names.  And the fact that the grand jury
> ended its investigation long ago also reduces the need for secrecy.
> These considerations can be weighed in determining whether a
> "matter occurring before the grand jury" should be disclosed.

*In re Special Grand Jury 89-2*, 450 F.3d at 1177. The Supreme Court has

recognized that the secrecy surrounding grand juries may be lifted when the

traditional reasons for such secrecy are either no longer extant or are outweighed

by the need for disclosure. The balancing of these competing interests is "a highly

flexible one, adaptable to different circumstances and sensitive to the fact that

requirements of secrecy are greater in some situations than in others."  *United*

*States v. Sells Eng'g, Inc.,* 463 U.S. 418, 445 (1983). The Supreme Court has

provided the balancing test for determining when grand jury materials should be

disclosed:

> [d]isclosure is appropriate only in those cases where the need for it
> outweighs the public interest in secrecy, and. . . the burden of
> demonstrating this balance rests on the private party seeking
> disclosure. It is equally clear that as the considerations justifying
> secrecy become less relevant, a party asserting a need for grand jury
> transcripts will have a lesser burden in showing justification.

*Douglas Oil Co.,* 441 U.S. at 223; *accord Pittsburgh Plate Glass Co. v. United*

*States,* 360 U.S. 395, 400 (1959).

In addition to the Rule 6(e) analysis, the Court may order the release of

information under its inherent authority even if such release is not clearly sanctioned under Rule 6(e). It is a well-established principle that the supervising court has inherent discretion in relaxing the rule of secrecy that governs grand jury proceedings independent from Rule 6(e). *Id., see also Pittsburgh Plate Glass Co. v. United States,* 360 U.S. 395, 399 (1959); *United States v. Walczak*, 783 F.2d 852, 857 (9th Cir. 1986).  Rather than divest the court of its traditional authority to modify the obligations of secrecy, Rule 6(e) merely identifies some circumstances in which courts have determined that the need for disclosure is greater than the need for grand jury secrecy. See Fed. R.Crim. P. 6(e) advisory committee's note ("[t]his rule continues the traditional practice of secrecy on the part of members of the grand jury, except when the court permits a disclosure"). As the Supreme Court has recognized, "Rule 6(e) is but declaratory of [the principle that] disclosure is committed to the discretion of the trial judge." *Pittsburgh Plate Glass Co.*, 360 U.S. at 399. The Tenth Circuit has stressed that, while the grand jury system requires secrecy, "[s]ecrecy . . . is not absolute" and exceptions for the release of information exist.[8] *In Re Special Grand Jury 89-2*, 143 F.3d at 569.  The Tenth

---

[8] Various courts have recognized that federal courts have inherent supervisory authority to order disclosure in situations that fall outside the Rule 6(e) exceptions to grand jury secrecy. *In re Biaggi*, 478 F.2d 489 (2nd Cir. 1973); *accord In re Petition to Inspect and Copy Grand Jury Materials*, 735 F.2d 1261, 1267-68 (11th Cir. 1984), *cert. denied,* 469 U.S. 884 (1984); *In re Bullock*, 103 F. Supp. 639 (D.D.C. 1952); *District of Columbia Grand Jury*, 370 F. Supp. at 1227-28, writ of mandamus denied sub nom. *Haldeman v. Sirica*, 501 F.2d 714 (D.C. Cir. 1974); *Maryland Grand Jury*, 315 F. Supp. 662 (D. Md. 1970). Thus, when faced with a

Circuit expressly affirmed this inherent authority in its remand decision, though it

left the actual use of the authority to the Court's review:

> If Appellants seek relief beyond what, if any, is granted by the
> court under Rule 6(e), the court must then determine whether
> relief outside of Rule 6(e) is appropriate . . . [S]ome relief may
> be proper under the court's inherent authority. The government
> contends that there is no such inherent authority.  The
> Appellants contend the contrary.  There is substantial support
> for Appellants' position.    Several courts have held that "a
> court's power to order disclosure of grand jury records is not
> strictly confined to instances spelled out in [Rule 6(e)]." *In re
> Petition to Inspect and Copy Grand Jury Materials*, 735 F.2d
> 1261, 1268 (11th Cir. 1984); *see also Craig v. United States (In
> re Petition of Craig)*, 131 F.3d 99, 102 (2d Cir. 1997)
> ("Although  . . . Rule 6(e) governs almost all requests for the
> release of grand jury records, this court has recognized that
> there are certain 'special circumstances' in which release of
> grand jury records is appropriate even outside the boundaries of
> the rule."); *In re Grand Jury Proceedings*, 417 F.3d 18, 26 (1st
> Cir. 2005) (Rule 6(e) permits "rare exceptions premised on
> inherent judicial power" to *restrict* disclosure beyond the
> requirements of the rule); *see generally*, Beale, et al., *supra*, §
> 5.19 ("The courts . . . have recognized an 'inherent authority' to
> disclose grand jury materials, although they have confined that
> authority to exceptional cases.").

*Id.* The Tenth Circuit opined that it might not be necessary to reach the scope of

this inherent authority, given the possible release of material under Rule 6(e).

Thus the analysis below begins with the application of the Rule 6(e) standards.

---

request for disclosure, the court is not strictly confined to circumstances outlined
in Rule 6(e) in determining whether the interest in disclosure outweighs the
continued need for grand jury secrecy. *In re Petition to Inspect and Copy Grand*

## THE BASIS FOR RELEASE OF MATERIAL
## IN THE SECOND GROUP

A.      Release of Material under Rule 6(e).

The Tenth Circuit noted that two obvious considerations can "ameliorate[]" concerns under Rule 6(e). *In re Special Grand Jury 89-2*, 450 F.3d at 1177.  First, the Court can redact names.  Second, the Court can determine that the concerns of Rule 6(e) are already ameliorated by the long passage of time since the conclusion of the grand jury decades ago.  *Id.*

On the first consideration, the Turley Proffer and the examination of witnesses in the 1997 hearings were crafted to avoid core Rule 6(e) material and specifically to avoid the names of witnesses and targets.  A review of both the Turley Proffer and the 1997 transcripts will show that little, if any, redaction would be necessary.  The only common references are to the prosecutors, who are publicly known and not parties protected under Rule 6(e). Rule 6(e) was never intended to protect prosecutors from allegations of criminal and ethical violations. At no point in either the history of the Constitution's grand jury provision or Rule 6(e) have the interests of the prosecutors been cited as a motivating purpose.  In the instant case, the Petitioners have uniformly accused the prosecutors of serious misconduct and specifically contradicted statements given by the prosecutors to Congress.

---

*Jury Materials*, 735 F.2d at 1267-68; *District of Columbia Grand Jury*, 370 F.

On the second consideration, the analysis must necessarily begin with a frank recognition of the remote connection of this material to any of the concerns underlying Rule 6(e).  In the seventeen years since the establishment of this Special Grand Jury, many witnesses have died and the need for secrecy to protect investigatory options passed with the conclusion of any further criminal investigation over a decade ago.

Both the passage of time and the subject of the Turley Proffer and 1997 transcript should militate heavily toward release under Rule 6(e).  There is no public policy reason or original statutory purpose that would justify the continued sealing of this highly tailored information.  Conversely, there remains continuing public interest in this information and the Petitioners have repeatedly stressed that they wish to submit this information in congressional and professional proceedings that have been stymied by the government's long-standing efforts to keep this information from public view or use.

B.    The Release of Material in the Second Group under the Court's Inherent Authority.

The request for the release of this information goes directly to the integrity and honesty of the grand jury process.  As this Court has previously noted, "[t]he concerns that these petitioners have expressed are serious and substantial." *In re Special Grand Jury 89-2*, 2004 U.S. Dist. LEXIS 3942, at *8 (D. Colo. Mar. 12,

---

Supp. at 1228.

2004).  A review of the 1997 transcripts shows a consistent and detailed series of allegations of misconduct and possible criminal conduct by prosecutors in their handling of the grand jury proceedings.  Such allegations presented by so many witnesses in such a uniform fashion would normally trigger investigation by either the court or the Congress or both.  Yet, these allegations have been deprived the basic proof needed to bring charges due to the misuse of grand jury secrecy to protect the prosecutors themselves.  With the release of the information in the second group, both the grand jury and prosecutors can be heard on the allegations and address these fundamental questions.

As noted earlier, it is a well-established principle that courts have inherent authority, independent from Rule 6(e), to release grand jury material.  *See*, *e.g.*, *In re Petition of Craig*, 131 F.3d 99, 102-03 (2d Cir. 1997); *In re Petition to Inspect and Copy Grand Jury Materials*, 735 F.2d 1261, 1268-69 (11th Cir. 1984); *In re Biaggi*, 478 F.2d 489, 494 (2d Cir. 1973) (supplemental opinion); *see also United States v. Baggot*, 463 U.S. 476 (1983); 1 Charles A. Wright, Federal Practice and Procedure § 106, at 388 (3d ed. 1999) (noting that since *Baggot*, "lower courts continue to accept the holdings of the Second Circuit and Eleventh Circuit decisions as allowing disclosure beyond the limits of Rule 6(e)"). Disclosure of grand jury materials is committed to the discretion of the court, and Rule 6(e) codified this common law principle.  See *Pittsburgh Plate Glass Co. v. United States*, 360 U.S. 395, 399 (1959) ("[T]he federal trial courts as well as the Courts

of Appeals have been nearly unanimous in regarding disclosure as committed to the discretion of the trial judge . . . Rule 6(e) is but declaratory of it."); *In re Petition of Craig*, 131 F.3d at 102 (There are "'special circumstances' in which release of grand jury records is appropriate even outside of the boundaries of [Rule 6(e)] . . . which reflects rather than creates the relationship between federal courts and grand juries.") (citations omitted); *In re Petition to Inspect and Copy Grand Jury Materials*, 735 F.2d at 1268 ("[I]t has been authoritatively said that [Rule 6(e)] is not the true source of the district court's power with respect to grand jury records but rather is a codification of standards pertaining to the scope of the power entrusted to the discretion of the district court.").

Grand jury material should be released "where the need for it outweighs the public interest in secrecy." *Douglas Oil Co.*, 441 U.S. at 223; *see also In re Lynde*, 922 F.2d 1448, 1452 (10th Cir. 1991). While some courts have indicated that a stronger showing is generally required in cases not governed by Rule 6(e), *see, e.g., In re Petition of Craig*, 131 F.3d at 106 n.10, the Supreme Court has stated that, "as the considerations justifying secrecy become less relevant, a party asserting a need for grand jury transcripts will have a lesser burden in showing justification." *Douglas Oil Co.*, 441 U.S. at 223.  Here, the reasons justifying secrecy have not only become "less relevant," but have become virtually non-existent.

Given the continuing controversy over the Rocky Flats grand jury and the documented allegations contained in the second group of material, Petitioners respectfully submit that the use of the Court's inherent authority is both warranted and wise in this circumstance.

## THE BASIS FOR RELEASE OF MATERIAL
## IN THE THIRD GROUP

Admittedly, the third group of documents presents a closer question and must be carefully addressed under Rule 6(e).  Indeed, the parties could keep this third group in abeyance as the first two groups are addressed.  Yet, the relative amount of information in this third group that would be released under the proposed order would be small.  The greatest interest of the Petitioners is in the release of passages showing the exchanges between the grand jurors and prosecutors as to the restrictions placed on the investigation.  This information could be produced in the form of a greatly redacted transcript or a court summary that includes excerpts related to the issues of obstruction, perjury, or prosecutorial misconduct.  *Cf. In re Grand Jury Matter (Catania)*, 682 F.2d 61, 62 n.4 (3d Cir. 1982) (use of redactions to protect sensitive grand jury material); *In re Grand Jury*, 2004 U.S. App. Lexis 24864 *8 (9th Cir. 2004) (noting that disclosure of material before the grand jury would "not reveal grand jury information because they were carefully drafted and, where necessary, they were sufficiently

redacted").  This third group also includes the original grand jury report, which was released in a highly redacted fashion.

Petitioners are most interested in the first and second groups for the purpose of returning to Congress and the Justice Department to complete their earlier efforts to establish this misconduct through formal proceedings.  While they believe that some release of transcripts would be warranted at this stage, the Court may elect to hold this material in abeyance pending further proceedings or later motions.

### ADDITIONAL RELIEF SOUGHT
### WITH THE RELEASE OF INFORMATION

Petitioners also repeat their request for a published opinion that would address fundamental aspects of this controversy.  As the Tenth Circuit recently noted, Petitioners have never asked for an advisory opinion.  The requested opinion would normally follow disclosures as a matter of course and is no more an advisory opinion than the opinions of Judge Finesilver on January 26, 1993.  *See In re Grand Jury Proceedings, Special Grand Jury 89-2*, 813 F. Supp. at 1451; *In re Grand Jury Proceedings, Special Grand Jury 89-2*, 1993 WL 245557. When former Judge Finesilver characterized the report's redacted and unredacted material as, among other things, "conclusions without any factual bases," *id.* at 247, it was exercising its authority to explain the scope and meaning of a disclosure – not engaging in an advisory opinion.

While Petitioners understand that the Court will not rule on the merits of alleged unethical or criminal conduct by prosecutors, they hope that the Court will still note that, if true, these allegations raise very serious questions.  Moreover, in the face of these uniform allegations, Petitioners ask the Court to formally refer the matter for investigation by the either the Court or the Justice Department or both.

This litigation has now been maintained for over a decade by Petitioners' Counsel.  Accordingly, Petitioners reaffirm their request for reasonable attorneys' fees and costs to be submitted after the issuance of a final judgment in the case.

## SUMMARY OF PROPOSED PROCEDURE

To address the foregoing areas and issues, Petitioners respectfully propose the following process for the parties to resolve the question of relief in this case. Again, Petitioners would support a hearing to address this process and any attendant legal issues.

(1) With regard to the first group of material, the government would have thirty (30) days to submit any proposed redactions to the prior filings under seal. Any unredacted filings would then be unsealed.

(2)  The government would then have fourteen (14) days to propose any redactions of the Turley Proffer and the 1997 transcripts.  If no redactions are deemed necessary, these documents would then be unsealed.

(3) Petitioners would then have thirty (30) days to respond to the government's proposed redactions of all reserved documents under seal.

(4)  Withstanding any hearing on the merits of the redactions, the Court would then order the release of any documents in full or redacted form as it deems appropriate. *In re Special Grand Jury 89-2*, 450 F.3d 1159 (10th Cir. 2006).

(5)  Following the release of the second group of documents, the Petitioners will be allowed to submit motions for the release of material from the Special Grand Jury 89-2.

(6) After the final opinion of the Court in the case, Petitioners will be allowed to submit a request for reasonable attorneys fees and costs.

## CONCLUSION

A review of the 1997 transcripts reveals a detailed and tailored account of abuses by prosecutors that cannot by defended legally or professionally.  This transcript also directly contradicts statements given to Congress and the public. They are also illustrative of the restrained and responsible manner in which the grand jurors have sought permission to disclose their allegations of misconduct by the prosecutors in this case. This restraint stands in striking contrast to public statements made by the Justice Department attorneys, including personal attacks on the Petitioners and their alleged motives. *See An Angry Jury Deserves a Hearing*, The New York Times, Dec. 1, 1992, at 24 (relating former prosecutor denouncing the grand jurors as a group of "environmentalists" and "nuclear disarmers.").

The 1997 transcript and Turley Proffer offer a tailored body of information

that can, with some possible redactions, be released in the public interest without compromising the core values of the federal grand jury. More importantly, these two documents are highly instructive for the Petitioners in the scope of any future public comments. They offer the public and the Petitioners a comprehensive account of the misconduct allegations that led to this historic controversy.

Petitioners respectfully submit that it is time now for the public to learn the reasons for this unprecedented struggle of citizens to carry out the oaths that they took on August 1, 1987. It is an obligation to the public and to God that was invoked often by the former grand jurors, who have sought a great personal cost to fulfill their duties to themselves and the people of Colorado.

Respectfully submitted,

_____

Jonathan Turley
2000 H St., N.W.
Washington, D.C. 20052
(202) 994-7001
Counsel for Petitioners

## CERTIFICATE OF SERVICE

I hereby certify that, on November 14, 2006, true and correct copies of the

foregoing were sent by first-class United States mail, postage pre-paid, to counsel

for the United States at the address listed below.

Troy Eid
U.S. Attorney
1225 17th Street
Suite 700
Denver Colorado, 80202

Bette K. Bushell
1660 Lincoln St., 1450
Denver, CO 80264-1401


_____
Jonathan Turley
2000 H St., N.W.
Washington, D.C. 20052
(202) 994-7001
Counsel for Appellants