**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
Judge Richard P. Matsch

IN RE                                                    96 Y 203

SPECIAL GRAND JURY 89-2

---

**PETITIONERS' REPLY BRIEF IN SUPPORT OF**
**THEIR STATEMENT FOR RELIEF**

---

**INTRODUCTION**

Petitioners, former members of Special Grand Jury 89-2, respectfully submit the following reply brief in support of their pending statement of relief and motion to unseal parts of the current record.[1]  The government's brief filed on June 1, 2007 contains numerous mischaracterizations of fact[2] and law that will be addressed below.[3] However, despite a request from Petitioners, the government has

---

[1]     References to supporting material will cite to the Petition and its exhibits rather than burden the Court with a voluminous set of exhibits with this filing.

[2]     For example, the government claims that no member of Congress has expressed an interest in the information under seal.  Gov't Br. at 29.  However, one such member asked for a letter to be included with the petition and various committees have investigated this matter, but were prevented from delving further into the facts due to the seal in the case.

[3]     One repeated misrepresentation is that "Petitioners let this litigation languish," during a period when no new motions were filed. Due to the outstanding motion for sanctions, no further motions were filed pending resolution of the status of both Mr. Peck and Ms. Bushell.  On November 13, 1997, Mr. Turley filed a Motion for Rule 11 Sanctions against both Ms. Bushell and Mr. Peck for filing knowingly false statements with this Court. In its May 20, 2003 order, the Court decided that the charges against Mr. Peck and Ms. Bushell should be addressed

refused to reveal its argument on critical points – making a full response

impossible.  Petitioners strongly encourage the Court to allow them to review these

arguments or to disregard them entirely as outside of the adversarial process.

Finally, Petitioners wish to be clear that the government's allegations of violations

of Rule 6(e) made against Mr. Peck do not involve the Petitioners, who severed

both Mr. Peck and his counsel, Ms. Bushell, from their case in 1997.[4]  Whatever

the Court may chose to do with regard to the government's alleged criminal and

professional violations by Mr. Peck should not affect either the Petitioners or their

requested relief before this Court.  The Petitioners have scrupulously complied

with Rule 6(e) and are not accused of making any false representation to either this

Court or the Court of Appeals on their past conduct.

Through denials of fact and rehashed legal argument, the government is

attempting to avoid disclosure of the true facts in this case – despite making self-

defeating representations that much of the sealed information in dispute has

already been made public. While the government claims that the prosecutors acted

appropriately, the alleged misconduct in this case violates core standards of federal

law and professional conduct.  To ask the Court to ignore or condone such

---

under D.C. COLO. 83.5 so as not to delay these proceedings.  Due to the sealing of
material in the case, no action has been taken on the ethical issues raised by
Petitioners vis-à-vis Mr. Peck or Ms. Bushell.

[4]      In its factual statement, the government incorrectly states that Mr. Peck
filed a separate petition for relief in 1996.  In fact, Mr. Peck was represented with

misconduct is almost as shocking as the original misconduct.  Whether these

prosecutors or Mr. Peck face legal or professional charges are questions that should

be answered in the course of time and through a public record.

I.    PETITIONERS CANNOT RESPOND TO SECRET ARGUMENTS
      AND THE COURT SHOULD EITHER ORDER THE
      DISCLOSURE OF THE GOVERNMENT'S ARGUMENTS OR
      DISREGARD THOSE ARGUMENTS.

The government seeks to make its case before the Court through secret

argument.  Gov't Br. at 9. The most critical allegations in Petitioners' filing are

addressed in redacted sections that have been withheld from Petitioners.  *Id.*

Despite a request from counsel for copies of the unredacted argument, the

government has refused.  The result is entirely obnoxious to the legal process:

secret argument that Petitioners can neither read nor respond to.

Obviously, most attorneys would relish the possibility of being able to make

arguments that cannot be read, let alone refuted. However, our legal traditions

demand equal opportunity to address arguments.  To defend this extraordinary

tactic, the government advances the meritless argument that the responses involve

grand jury information.  Yet, such information may be disclosed to counsel and,

even without a protective order, counsel is under strict obligations to protect such

the other petitioners until counsel moved to sever both Mr. Peck and Ms. Bushell
in 1997 after they learned of serious conflicts of interest.

information.[5]  The reason for the use of secret argument appears tactical rather than legal.  Obviously, the petitioners are aware of this information since they were present in the grand jury.  As for counsel, this Court has already ordered that Petitioners' counsel be allowed to receive information from the grand jury process covered by Rule 6(e).  Indeed, the parties argued this very point repeatedly before Professor Turley was allowed to interview the former grand jurors on what occurred in the grand jury.  The issue of access was also discussed before this information was incorporated into the Turley Proffer.  The government has long maintained that this was all Rule 6(e) material but has participated in litigation for years involving the information without seeking the right to present secret arguments.

What is particularly maddening is the suggestion by the government that "[t]he grand jurors were frustrated by the law's limitation on their authority to issue indictments and a report and [*sic*] to close Rocky Flats, and their memories were influenced by those frustrations." Gov't Br. at 5.  The government, however, refuses to share the specific transcript references that it claims refute these memories – which were uniformly reported by all of the Petitioners.  As for the

---

[5]     Indeed, only recently counsel in a grand jury case was forced to relinquish his license and was sentenced to over two years in jail for leaking grand jury material.  *Attorney Sentenced for Grand Jury Leak,* Associated Press, July 13, 2007 (discussing the sentencing of Troy Ellerman who voluntarily gave up his license in California and was sentenced for giving material from the grand jury investigations into the BALCO scandal).

"leading questions" of Professor Turley, Gov't Br. at 5, the examination of each Petitioner was structured by the Turley Proffer, as agreed with the Court. The 1997 transcripts show point by point sworn testimony supporting serious acts of prosecutorial misconduct and potential criminal acts.

In the view of the Petitioners, there are only two appropriate responses to this opportunistic tactic by the government: either the secret arguments should be discarded entirely without consideration by the Court or the Court should order the disclosure of the arguments to Petitioners to allow for a proper response.[6]

II.     THE GOVERNMENT'S ARGUMENT THAT THE SEALED INFORMATION HAS ALREADY BEEN DISCLOSED UNDERMINES RATHER THAN ADVANCES ITS CALL FOR WITHHOLDING THE INFORMATION.

Much of the government's brief is committed to showing that much of the sealed information has already been made public and that, accordingly, no further release of information is warranted. First, this argument undermines the government's claim that the material must remain under seal since such public disclosure has always been treated as a rationale for public disclosure. Second, the information sought in this case has not been released in a form that would allow the public or appropriate officials to understand or act on the allegations.

The government makes the extraordinary claims that "the former grand

---

[6]     To the extent that the government bases its refusal to reveal grand jury material to Mr. Peck in light of his alleged violation of Rule 6(e), such a limitation

jurors already have – through numerous leaks, disclosures, and publications – made public their allegations of prosecutorial misconduct and nothing has prevented Congress, law enforcement officials, attorney disciplinary officials, or the public from pursuing the Petitioners' allegations." Gov't Br. at 6.  This facially disingenuous argument ignores that fact that, absent a confirmed official record, these disclosures may be dismissed as mere speculations.  The Petitioners have refrained from making public disclosures of their allegations.  The Turley proffer and 1997 transcripts detail allegations that have never been public – the government's conclusory statements notwithstanding.  No governmental or bar association would or could act on such press accounts or unofficial leaks – as the government well knows.[7]

It is equally frivolous to argue that "public officials could have sought access to the grand jury transcripts to pursue the Petitioners' allegations."  Gov't Br. at 6.  Petitioners have been open about their discussions with Congress and filed a letter of congressional interest with their Petition.  These offices are aware of the long effort to disclose the basis for these allegations and to allow the former grand jurors to discuss those allegations.  If allowed, Petitioners intend to give any

---

should not prevent the Petitioners from gaining access to the material – thereby allowing some adversarial element in these deliberations.

[7]     Ironically, the government alleged violations by Mr. Peck of Rule 6(e) and related bar rules only further demonstrates the need to unseal parts of this record. If true, such allegations could not be effectively investigated unless the record is unsealed as to Mr. Peck's testimony and prior filings.

unsealed information to these offices, as they have promised.  At the moment, the Petitioners are restricted from even fully informing officials of what they may find in the sealed record.  Moreover, even if these offices demanded the documents directly and independently, the government is likely to fight disclosure with the same vigor as it has in this case.  Finally, these offices have noted the need to speak with the former grand jurors through the years, including the Wolpe investigation cited by the Justice Department. While the government had no problem with the prosecutors speaking with Congress on these allegations, they have repeatedly opposed any effort on the part of the actual witnesses of the misconduct to do so.

As a substitute for an official record of the allegations, the government cites only a book by a former grand juror who is not part of this case and never was part of this case.  Moreover, the statements in this book by Mr. Wes McKinley are very general and do not, as suggested by the government, cover the same detailed issues as either the Turley Proffer or the 1997 transcripts.  Likewise, the government cites various government reports, which did not address the prosecutorial misconduct alleged in this case.  Petitioners have consistently maintained that they are not interested in litigating the merits of the Rocky Flats charges. They have focused entirely on the conduct of prosecutors in the grand jury proceedings.  Congress repeatedly was stymied by the barrier imposed by the sealing of the case and the

enforced silence of the former grand jurors.[8]

Finally, the continual reference to the availability of the grand jury report is of no avail.  The government has never (before now) moved to confirm the authenticity of these reports on the Internet.  Even if confirmed, the report concerns the merits of the Rocky Flats investigation and potential charges.  Despite repeated attempts by the government to portray the focus of the relief as the report, this is not the focus of this litigation.  Petitioners are primarily seeking the release of the Turley Proffer and the 1997 transcripts.

III.    MR. PECK'S ALLEGED CRIMINAL AND UNETHICAL ACTS
        HAVE NO BEARING ON THE PETITIONERS WHO SEVERED
        MR. PECK AND MS. BUSHELL IN 1997 FROM ANY
        INVOLVEMENT IN THEIR PETITION.

The government places great emphasis on its disclosure for the first time to the Court that it has evidence that Mr. Peck violated Rule 6(e) by removing the grand jury report, presentments, and proposed indictments from the Court.  This evidence in Attachment 35 is offered by the government to show that Mr. Peck allegedly disclosed grand jury information to his sister, Ms. Folcke, and asked her to distribute the information to the media and others.  This violation allegedly occurred in 1992 during the pendency of the grand jury proceeding, Gov't Br. at

---

[8]     As noted previously to the court, Professor Turley was the author of an investigation into the Environmental Crimes Section for the House Judiciary Committee.  As with the other investigations, this investigation specifically excluded Rocky Flats because it was considered an on-going dispute and under seal.

24, and was revealed by Ms. Folcke in 1997 to the Federal Bureau of Investigation (FBI).

Petitioners have always acknowledged that any disclosure of Rule 6(e) information would violate their oaths and constitute a possible criminal offense. Each of the former grand jurors testified under oath in 1997 that they did not disclose Rule 6(e) material and honored their oaths to the Court.  They have scrupulously observed these rules and sought disclosure only through the court system.  The government's attempt to paint the Petitioners with Mr. Peck's alleged misconduct is entirely unfair and unwarranted.  Likewise, if Mr. Peck did call the other jurors "bimbos or a bunch of idiots," it is entirely irrelevant. Gov't Br. at 24. The fact that the government would quote such a personal attack on the former grand jurors only serves to highlight its effort to use Mr. Peck to prejudice the Court against the other former grand jurors.

Mr. Peck is entitled to a presumption of innocence.  He has stated under oath in 1997, in repeated statements to this Court, and to the Tenth Circuit that he has never violated Rule 6(e).  For their part, the Petitioners have no interest or involvement in the allegations against Mr. Peck.  Indeed, the public record demonstrates that Petitioners have maintained a strictly independent posture vis-à-vis Mr. Peck and Ms. Bushell. [9] In 1997, after Mr. Peck's testimony, Petitioners'

---

[9]     While there are exceptions to confidentiality limitations that may be applicable in this case, Petitioners' Counsel is not prepared at this time to make a

Counsel learned of certain facts that led them to immediately move to sever Mr. Peck.[10] They also immediately sought to sever Ms. Bushell from any further representational role or connection to the Petitioners.  Later, Petitioners brought a motion for sanctions against both Mr. Peck and Ms. Bushell.  In addition to these acts, Petitioners have repeatedly stated in filings and in open court on both the trial and appellate levels that they do not support or affirm any factual assertions by Mr. Peck.  They have maintained this position, even in direct discussions with the government when Mr. Peck's representations have been brought into question.  Indeed, after the pre-argument conference with the panel, the government counsel and Petitioners' Counsel discussed Mr. Peck's statement to the judges that he had never disclosed Rule 6(e) information to anyone.  Petitioners stressed at that time that they would not endorse any factual representation made by either Mr. Peck or Ms. Bushell.  Finally, in the last trial hearing before this Court, Petitioners' Counsel again expressly stated that his clients do not subscribe to any factual representations made by Mr. Peck or Ms. Bushell.

---

full disclosure of the facts leading to the severance of Mr. Peck or Ms. Bushell absent a release from Mr. Peck or a court order.

[10]     Indeed, Petitioners and Mr. Peck have taken fundamentally conflicting positions during this litigation.  For example, Mr. Peck filed papers in agreement with the government that the entire case should be dismissed due to a failure to file a notice of appeal within the statutory period. Peck Resp. to Show Cause Order (October 29, 2004).  Mr. Peck made no effort to argue that the litigation could or should continue.  The case was dismissed after Mr. Peck's filing and Petitioners had to litigate the issue for months to reinstate the appeal and show that Mr. Peck and the government were applying the wrong standard.

As these public statements indicate, Petitioners have maintained this strict separation from Mr. Peck and Ms. Bushell – a line maintained after confidential consultation with Colorado bar and legal ethics experts.  They have done so to preserve not just their standing with the law but their standing with this Court.  They are all deeply grateful for the trust that this Court has placed in them and their counsel.  It would be a great injustice if, as the government suggests, they are held responsible for any federal or ethical violations that might have been committed by Mr. Peck or Ms. Bushell.  Whatever the Court may elect to do with the evidence presented by the government, they ask that their case be allowed to proceed unhindered by the allegations.

IV.     THE PETITIONERS HAVE SPECIFICALLY ALLEGED
        CRIMINAL AND ETHICAL VIOLATIONS THAT MAY STILL BE
        THE SUBJECT OF LEGAL SANCTIONS.

The government suggests that, even if true, none of the allegations by the Petitioners would amount to violations of federal law or legal ethics by the prosecutors.  The basis for this argument remains clouded since it is addressed in great part in secret argument that excludes opposing counsel.

The government seeks to diminish the public interest in disclosing potential crimes by its own attorneys by arguing that, even if crimes or ethical misconduct occurred, the statute of limitations protects its attorneys from any charges.  The first obvious response is that the disclosure of criminal acts by government officials is always in the public interest – regardless of whether formal charges

can be brought.  Second, it is not clear that criminal or ethical charges cannot be brought.  In this case, the prosecutors used grand jury secrecy to shield criminal conduct ranging from alleged perjury before Congress to obstruction to false statements to a grand jury and court.  Whether the applicable statute is tolled in such a case of concealment or obstruction is a matter for the courts.  *See, e.g.,* Daniel W. Shuman & Alexander McCall Smith, Justice and the Prosecution of Old Crimes: Balancing Legal, Psychological and Moral Concerns 59 (2000); *Harrison v. Walsh,* 2007 U.S. Dist. LEXIS 39616 (June 1, 2007) (discussing the tolling of criminal statutes of limitations).  For example, C.R.C.P. 251.32(I) expressly provides that, even though the statute of limitations is normally five years, "[t]here shall be no statute of limitation for misconduct alleging fraud, conversion, or conviction of a serious crime, or for an offense the discovery of which has been prevented by concealment by the attorney." This is a case where the alleged crimes would be known only with the unsealing of part of the record.  Moreover, it is likely that Congress would be interested in calling the prosecutors back to address the prior questions in light of the disclosure – creating a new potential offense or an opportunity for an admission.  The point is that the Justice Department cannot use its own efforts at delay and obstruction of this case to now insist that too much time has transpired to address any wrongdoing.

The Justice Department notably does not address the allegations that the prosecutors may have lied to Congress, obstructed congressional investigations, or

misled the Court in this matter.  Instead, they focus on obstruction of justice and dismiss the allegation in a few cursory lines.  As Petitioners have stressed, they are not asking this Court to decide the merits of these allegations.  Rather, they argue that the allegations are sufficiently uniform among the Petitioners and sufficiently serious in character to warrant unsealing of the Turley Proffer and 1997 transcripts.  As to the merits, the government offers nothing beyond the conclusory statement that the prosecutors "exercised their discretion."  Gov't Br. at 26.  Yet, it is not their discretionary choices that are at issue.  The Petitioners have given detailed accounts of how the prosecutors obstructed their efforts to question witnesses, lied to grand jurors about legal standards, objected to the form of their questions, and otherwise impeded their investigation.  Lying to witnesses about the legal standard that applies to questions is not a discretionary act – it is an obstructionist and unethical act.

The government also does not address the specific allegations of misconduct – at least in non-secret argument.  Petitioners have detailed how (1) prosecutors interfered with the scope and direction of the investigation against their wishes; (2) refused to call witnesses; (3) interfered with the questioning of witnesses; (4) misrepresented federal law and guidelines; (5) refused to assist in the drafting of indictments; (6) refused to assist in drafting a report; (7) refused to answer legal questions; (8) misrepresented facts to the court; (9) actively protected government officials from questioning or investigation; and (10) attempted to

intimidate the grand jurors through abusive conduct.  These acts raised very serious questions under federal law, ethics rules, and departmental regulations. Yet, the government suggests that there is nothing unethical in such acts, such as lying to a grand jury or preventing its members from carrying out their duties or becoming physically abusive.  The government simply concludes that no Colorado "rules specifically address a prosecutor's relationship to a grand jury." Gov't Br.  at 28.  Yet, the ethical rules prohibit attorneys from making false statements, engaging in unprofessional conduct, violating candor to the tribunal and other basic requirements. The very suggestion that none of the alleged misconduct would amount to a violation under bar rules is an astonishing and alarming position for the government to take in this matter.  It is precisely the sense of immunity that contributed to the violations in the first place.

V.     NO CONGRESSIONAL COMMITTEE HAS CLEARED THESE PROSECUTORS OF MISCONDUCT.

Perhaps the most extraordinary statements in the government's brief relate to the past congressional investigations.  The government repeatedly suggested that congressional committees investigated and found no prosecutorial misconduct in this case.  That is clearly untrue.  Each of the prior investigations had to proceed without the benefit of speaking with the grand jurors due to Rule 6(e).  While the Justice Department maintained this line, it notably allowed its own prosecutor to speak with the committees despite the fact that they were under the same

limitations.  Thus, with regard to both the congressional and internal

investigations, only the prosecutors were allowed to address generalized claims of

misconduct.  Not surprisingly, the Justice Department announced that it found no

evidence of misconduct in speaking with the accused prosecutors.

It is clearly misleading to state that "a Congressional subcommittee

reviewed the case and did not find prosecutorial crimes or misconduct."  Gov't Br.

at 6, 24, 25.  The Wolpe Report of the House Committee on Science, Space, and

Technology did not clear any prosecutors.  Rather it was highly damning of the

entire investigation.  It was unable, however, to investigate the matter further due

to the fact that the only witnesses to the misconduct were gagged under Rule 6(e).

Wolpe himself expressed a desire to hear the testimony of former grand jurors

before the release of his report.  Kelly Richmond, *Chairman Questions Failure To

Indict In Rocky Flats Case*, States News Service, October 2, 1992.  Such

testimony, however, remained blocked by the Justice Department, which actively

pursued possible criminal charges against the grand jury.  Thus, in the most

circular logic, the Justice Department litigates for years to prevent the grand jurors

from disclosing their specific allegations and then says that it has been vindicated

by the fact that no such allegations have been established during that period.  Once

again, the use of such argument should serve to undermine the credibility of the

entire effort of the government to resist disclosures in this case.

VI.    THE GOVERNMENT SEEKS TO RELITIGATE RULE 6(e)
       QUESTION FOR A FIFTH TIME RATHER THAN ADDRESS
       PETITIONERS DETAILED DOCUMENT-BY-DOCUMENT
       ANALYSIS FOR UNSEALING THE RECORD.

The government spends considerable space attempting to relitigate the question of whether this Court has the inherent authority to release this information or whether Rule 6(e) is satisfied in such a case.  This is now the fifth time that the government has argued this issue.  It did so when the case was filed without effect.  It did so before the Turley Proffer was ordered and lost.  It did so before the Court of Appeals and lost.  It did so before this Court after losing on the appellate level without effect.  Now, it is again arguing the point rather than fully addressing the specific disclosures identified by Petitioners.

Rather than divest the court of its traditional authority to modify the obligations of secrecy, Rule 6(e) merely identifies some circumstances in which courts have determined that the need for disclosure is greater than the need for grand jury secrecy.  *See* Fed. R. Crim. P. 6(e) advisory committee's note ("[t]his rule continues the traditional practice of secrecy on the part of members of the grand jury, except when the court permits a disclosure").  As the Supreme Court has recognized, "Rule 6(e) is but declaratory of [the principle that] disclosure is committed to the discretion of the trial judge." *Pittsburgh Plate Glass Co.,* 360 U.S. at 399.  As the Tenth Circuit has stressed, "[s]ecrecy . . . is not absolute" and exceptions for the release of information exist. *In Re Special Grand Jury 89-2,*

143 F.3d at 569. On appeal, the Tenth Circuit held that the court has authority to unseal material in this case under either Rule 6(e) or its inherent powers. Nevertheless, the government repeats its earlier argument with general sections on "the roles of the grand jury and the prosecutor" and "the importance of grand jury secrecy."  Given the long appeal and prior hearing, Petitioners had expected to be beyond these initial questions. They will, therefore, rely on their prior four briefs on this issue.   However, it is important to note that the government itself supplies one of the most compelling reasons cited in the past for the release of such sealed material:  prior disclosures and the passage of time.  *See, e.g.*, *In re Petition of Am. Historical Ass'n*, 49 F. Supp. 2d at 291-97 (granting disclosure of grand jury transcripts because of a "minimal need" for secrecy, the passage of fifty years since the grand jury investigation, and the specific historical importance of the transcripts).  By seeking to use Rule 6(e) to shield the Justice Department from criticism, the government is using this rule for a purpose never intended by Congress or prior courts.  As one court put it:

> The public must acquire, at an appropriate time, a significant, if not compelling, interest in ensuring the pages of history are based upon the fullest possible record. This would seem especially so where, as here, a case fosters vigorous and sustained debate not only about the case itself, but also about broader issues concerning fundamental and, at times, countervailing aspects of our democracy—freedom of expression, privacy, consent as citizens to a democratic form of government, governmental investigative power, separation of powers, and the role and function of grand juries themselves. Access to such information inevitably enhances the accuracy of history and undermines the false conspiracy theories and revisionism that tend to

> arise when information remains secret. Moreover, disclosure can
> only, in the long run, build confidence in our government by
> affirming that it is open, in all respects, to scrutiny by the people.

*In re Petition of Am. Historical Ass'n*, 49 F. Supp. 2d at 295; *see also In re Petition of O'Brien*, No. 3-90-X-95 (M.D. Tenn. May 16, 1990) (unpublished opinion cited in *In re Petition of Am. Historical Ass'n*, 49 F. Supp. 2d at 293) (permitting disclosure forty-five years after grand jury investigation of race riots); *In re Petition of May*, 651 F. Supp. 457 (S.D.N.Y. 1987) (unpublished memorandum and order cited in *In re Petition of Am. Historical Ass'n*, 49 F. Supp. 2d at 281) (permitting disclosure thirty-five years after investigation of William Walter Remington).  It is precisely the integrity of the grand jury system that demands disclosure in this case.

Petitioners have supplied sworn and detailed allegations of serious misconduct.  The issue is not whether the government or even the Court believes that the merits favor one party. The issue is whether the sworn statements of these former grand jurors are sufficient to raise sufficiently credible claims to justify the unsealing of portions of the record.  These allegations could not be more serious for the legal system or the people of Colorado.  Most importantly, the allegations have been made under oath by former grand jurors who are entirely consistent in their accounts of prosecutorial misconduct.  Petitioners have also supplied a document-by-document analysis of material that can be released in redacted or full form – a detailed filing that has been ignored by the government in favor of its effort to

relitigate threshold legal issues in the case.  Finally, Petitioners have proposed a reasonable process for the release of limited information while withholding other information to determine its relevance in later proceedings.  Petitioners submit that this record supplies a compelling basis for release and respectfully request that the Court grant their relief in this matter.

Respectfully submitted,

s/Jonathan Turley
Jonathan Turley
2000 H St., N.W.
Washington, D.C. 20052
(202) 994-7001
Counsel for Petitioners

## CERTIFICATE OF SERVICE

I hereby certify that, on July 18, 2007, true and correct copies of the foregoing proposed list was electronically filed with the clerk of court using the CM/ECFsystem.  Notification was sent via e-mail by the system to the following individuals.


Troy Eid, Esq.
John Haried
U.S. Attorney for the District of Colorado
1225 17th Street
Suite 700
Denver Colorado, 80202

Bette K. Bushell, Esq.
Bushell & Peck, L.L.C.
303 East Seventeenth Avenue
Suite 350
Denver, Colorado  80203


       s/Jonathan Turley          
Jonathan Turley
2000 H St., N.W.
Washington, D.C. 20052
(202) 994-7001
Counsel for Appellants